Edward J. Loya, Jr. (State Bar No. 257346)
   *eloya@venable.com*
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Jessie F. Beeber (Admitted *Pro Hac Vice*)
   *jbeeber@venable.com*
Patrick J. Boyle (Admitted *Pro Hac Vice*)
   *pboyle@venable.com*
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

Attorneys for Defendant Michael K. Sun

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>JAMMIN' JAVA CORP., dba MARLEY COFFEE, SHANE G. WHITTLE, WAYNE S. P. WEAVER, MICHAEL K. SUN, RENE BERLINGER, STEPHEN B. WHEATLEY, KEVIN P. MILLER, MOHAMMED A. AL-BARWANI, ALEXANDER J. HUNTER, and THOMAS E. HUNTER,<br><br>Defendants. | Case No. 2:15-CV-08921-SVW-MRW<br><br>Hon. Stephen V. Wilson<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT MICHAEL K. SUN'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2), 12(B)(6) AND 9(B)**<br><br>Hearing: May 23, 2016<br>Time: 1:30 p.m.<br>Courtroom: No. 6<br><br>Action filed: November 17, 2015<br>Trial date: October 25, 2016 |

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................1

II. THE SEC RECASTS THE FACTS IT ALLEGED IN THE COMPLAINT ........................................................................................4

III. THE SEC HAS NOT SHOWN SUN'S MINIMUM CONTACTS WITH THE UNITED STATES, AND THERE IS THUS NO PERSONAL JURISDICTION OVER HIM ........................................................5

IV. THE SEC FAILS TO STATE A SECTION 5 CLAIM .....................................7

    A. The Complaint Does Not Allege That Sun Directly Sold Any Stocks ........................................................................................7

    B. The SEC Fails to Allege Sun Was A Necessary Participant And Substantial Factor In Westpark's Alleged Transactions .....................9

V. THE SEC FAILS TO STATE A SECTION 13(D) CLAIM ...........................10

VI. THE SEC FAILS TO STATE A SECTION 10(B) CLAIM ...........................11

    A. The SEC Misstates The Applicable Pleading Standards .........................11

    B. The Complaint Fails to Meet Rule 9(b)'s Strict Pleading Standard ........................................................................................12

VII. THE COURT SHOULD DISMISS WITH PREJUDICE ...............................12

VIII. CONCLUSION ........................................................................................12

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page**

**CASES**

Akers v. United States,
　No. CIV. 01-1348-HU, 2002 WL 32512845 (D. Or. Apr. 3, 2002) ...................... 11

Ashcroft v. Iqbal,
　556 U.S. 662 (2009).............................................................................. 2, 3, 11

Burger King Corp. v. Rudzewicz,
　471 U.S. 462 (1985)................................................................................... 6

Dole Food Co. v. Patrickson,
　538 U.S. 468 (2003)................................................................................... 3

Dole Food Co. v. Watts,
　303 F.3d 1104 (9th Cir. 2002) .................................................................... 5

Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.,
　No. 1:11-CV-00030-AWI, 2012 WL 6097105 (E.D. Cal. Dec. 7,
　2012) ......................................................................................................... 4

Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC,
　115 F. Supp. 2d 440 (S.D.N.Y. 2000) ....................................................... 10

Nat'l Council of La Raza v. Cegavske,
　800 F.3d 1032 (9th Cir. 2015) .................................................................. 12

Olenicoff v. UBS AG,
　No. SACV 08-1029 AG RNBX, 2010 WL 8530286 (C.D. Cal. Mar.
　16, 2010) .................................................................................................... 7

In re Request for Int'l Judicial Assistance (Letter Rogatory) from
　Federative Republic of Brazil,
　No. MISC. M-13-72, 1990 WL 29357 (S.D.N.Y. Mar. 9, 1990).............................. 2

S.E.C. v. Alexander,
　No. 1:00-cv-07290 (LTS) (HBP), 2003 WL 21196852 (S.D.N.Y. May
　20, 2003) .................................................................................................... 7

S.E.C. v. Blackburn,
　2015 WL 9459976 (E.D. La. Dec. 28, 2015) ......................................... 8, 9

S.E.C. v. Calvo,
   378 F.3d 1211 (11th Cir. 2004) ............................................................................... 3

S.E.C. v. CMKM Diamonds, Inc.,
   729 F.3d 1248 (9th Cir. 2013) ............................................................................... 9

S.E.C. v. Euro Sec. Fund,
   No. 98 CIV. 7347 (DLC), 1999 WL 76801 (S.D.N.Y. Feb. 17, 1999) .................... 6

S.E.C. v. Fraser,
   No. CV-09-00443-PHX-GMSC, 2009 WL 2450508 (D. Ariz. Aug.
   11, 2009) ............................................................................................................. 11

S.E.C. v. Murphy,
   626 F.2d 633 (9th Cir. 1980) ................................................................................. 8

S.E.C. v. Reynolds,
   No. 3:08-CV-0438-B, 2013 WL 3778830 (N.D. Tex. July 19, 2013) ................ 3, 8

S.E.C. v. Rosen,
   No. 01-0369-CIV, 2002 WL 34421029 (S.D. Fla. Feb. 22, 2002) ...................... 3, 8

S.E.C. v. Sharef,
   924 F. Supp. 2d 539 (S.D.N.Y. 2013) .................................................................... 7

Silva v. U.S. Bancorp,
   No. 5:10-CV-01854-JHN, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ................ 5

Swartz v. KPMG LLP,
   476 F.3d 756 (9th Cir. 2007) ................................................................................. 3

Wool v. Tandem Computers, Inc.,
   818 F.2d 1433, 1439 (9th Cir. 1987) .................................................................... 11

**STATUTES**

Securities Act Section 5 ............................................................................................ *passim*

Securities Exchange Act Section 10(b) ......................................................... 1, 5, 6, 12

Securities Exchange Act Section 14(e) .................................................................... 6

Securities Exhange Act Section 5(a) ........................................................................ 1

Securities Exhange Act Section 5(c) ........................................................................ 1

Securities Exhange Act Section 13(d) ................................................................................... 1, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..................................................................................... 3, 4, 11, 12

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 12

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 12

Defendant Michael K. Sun ("Sun"), through his undersigned counsel, respectfully submits this Reply Memorandum of Law in Further Support of Defendant Sun's Motion to Dismiss (Docket No. 50).[1]

# I. PRELIMINARY STATEMENT

In his moving brief, Sun demonstrated that the allegations against him in the Complaint are insufficient to support the SEC's claims. Specifically, the SEC did not allege Sun's actual involvement in any of the transactions at issue, or any participation in the alleged plans of the "group" that the SEC says orchestrated the pump-and-dump of Jammin' Java shares. Instead, the SEC merely alleged that Sun was an owner of Westpark, and attempted to link him to everything else through guilt by association.

In response, the SEC has not attempted to cure its pleading deficiencies. Instead, it has tried to recast the existing allegations in the Complaint in order to fill the holes. But this is not sufficient to establish personal jurisdiction over Sun or to state a claim against him for violations of Sections 5(a) and (c) of the Securities Act; Section 13(d) of the Exchange Act; or Section 10(b) of the Exchange Act.

For example, Sun argued that (if taken as true) his ownership of Westpark did not transform all allegations against Westpark into allegations against him. This was especially true since the Complaint alleged that another individual, René Berlinger, had "sole dispositive power" over the Westpark brokerage account, and signed the share purchase agreement on Westpark's behalf (Compl. ¶¶ 53, 55(c)). The SEC responded by simply placing Sun's name in parentheses next to Westpark's in its brief (See, e.g., Opp. Br. 5 ("Donnolis . . . transferred to **Westpark (*i.e.*, Sun)** 2.89 million of the shares . . . . **Westpark (Sun)** did not have to pay for the shares on the spot" (emphasis added)); see also id. at 7 ("**Westpark (Sun)** sold 2.89 million shares of

---

[1] Defined terms used herein are the same as those set forth in Sun's Memorandum of Points and Authorities in Support of his Motion to Dismiss the Complaint (Docket No. 50) (the "Opening Brief" or "Opening Br."). "Opposition Brief" or "Opp. Br." refers to Plaintiff SEC's Response to Sun's Motion to Dismiss (Docket No. 67).

Jammin' Java stock") (emphasis added))). But the SEC cannot make Sun and Westpark one and the same merely by writing their names side by side. Instead, the SEC must demonstrate Sun's involvement by reference to Sun's actual conduct—a basic pleading requirement that the Complaint fails to meet.

Similarly, every time the SEC mentions Sun's role in Westpark in its brief, it now says that Sun both "owned and controlled" that entity, as an attempt to get around Sun's argument that ownership alone is not enough (Opp. Br. 1). The SEC says that it alleged Sun's "control" of Westpark in "no uncertain terms," but that is not true. In fact, that "control" is only mentioned in one subparagraph of the Complaint, where the SEC alleges that Sun was required to report his beneficial ownership of Jammin' Java stock because he "controlled or shared control of, at a minimum, Westpark and Cilitz," and when the holdings of those companies were combined with the holdings of other entities allegedly owned and controlled by other people, as part of a "control group," the 5% threshold was allegedly crossed (Compl. ¶ 82(b)). Other than this stray mention, there is not one fact alleged in the Complaint that demonstrates, or even suggests, how Sun owned or controlled Westpark or Cilitz. Again, just saying "control" in the brief does not make it so. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted)); Cf. In re Request for Int'l Judicial Assistance (Letter Rogatory) from Federative Republic of Brazil, No. MISC. M-13-72, 1990 WL 29357, at *1 (S.D.N.Y. Mar. 9, 1990) (noting in the context of Panamanian corporations' motion to quash a subpoena seeking corporations' bank statements that "Petitioners are not bound by [the bank's] conclusions on the crucial issue of 'control.'").

Moreover, the Court may not "infer" from the mere allegation that Sun "owned" Westpark that he also "controlled" every aspect of it such that he can be held

individually liable for all of Westpark's alleged conduct (Opp. Br. 4). "Control and ownership . . . are distinct concepts," and the SEC may not do away with "[a] basic tenet of American corporate law[,] that the corporation and its shareholders are distinct entities[,]" by its choice of words in its brief. Dole Food Co. v. Patrickson, 538 U.S. 468, 474-77 (2003).

The SEC's inability to identify any factual allegations in the Complaint to support its claims is especially egregious here, because it has brought fraud claims against Sun, which require particularized factual allegations sufficient to meet Rule 9(b)'s heightened pleading standard. See Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." (internal quotation marks, brackets, and citation omitted)).

Sun's "ownership" of Westpark also does not make him a "direct" seller for purposes of Section 5 liability, nor is it sufficient to meet the "necessary participant and substantial factor" test. The SEC cites no case where ownership alone was sufficient to impose liability, nor could it have, because such a ruling would turn corporate law upside down. The SEC also ignores the cases Sun cited that apply the "necessary participant and substantial factor" test to determine a principal's liability for his company's alleged Section 5 violation. See S.E.C. v. Rosen, No. 01-0369-CIV, 2002 WL 34421029 (S.D. Fla. Feb. 22, 2002), aff'd in part sub nom. S.E.C. v. Calvo, 378 F.3d 1211 (11th Cir. 2004); S.E.C. v. Reynolds, No. 3:08-CV-0438-B, 2013 WL 3778830 (N.D. Tex. July 19, 2013).

While the SEC need not *prove* Sun's control over Westpark at this stage of the litigation, it must allege his control through *factual allegations*; "naked assertions devoid of further factual enhancement" will not do. Iqbal, 556 U.S. at 678 (internal quotation marks, brackets, and citation omitted). The SEC may not simply sue first,

and ask questions later. Compare Opp. Br. 10 n.3, with Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc., No. 1:11-CV-00030-AWI, 2012 WL 6097105, at *6 (E.D. Cal. Dec. 7, 2012) (denying leave to amend and noting that "the particularity requirement of Rule 9(b) is designed to discourage a 'sue first, ask questions later' philosophy."). This is all the more true in a case where the government seeks to hold a foreign national, without any ties to the United States, liable based on such theories.

## II. THE SEC RECASTS THE FACTS IT ALLEGED IN THE COMPLAINT

The SEC boldly proclaims that "[i]n no uncertain terms, [the Complaint] alleges that Sun 'owned and controlled' . . . Westpark" (Opp. Br. 4). In support of this proposition, it cites to various paragraphs of the Complaint, (see Opp. Br. 4 (citing Compl. ¶¶ 52, 54, 73-74, 77, 82, 99, 101, 102)), but nearly half of those paragraphs do not reference Sun's "control" at all (see Compl. ¶¶ 52, 73-74, 101-102), and the others are entirely conclusory (see, e.g., Compl. ¶ 82(b) (only conclusorily alleging that "Sun controlled or shared control of . . . Westpark.")).

Moreover, the dearth of allegations against Sun is in stark contrast to the litany of specific factual allegations detailing Berlinger's control of Westpark and its alleged Jammin' Java related transactions (see, e.g., id. 52(a), 53, 55(c)).[2] Similarly, where the SEC alleged that other individuals owned certain entities, it also specifically alleged control as well (Compare id. ¶ 52(a), with id. ¶ 52(b) (alleging that "Weaver *owned* Calgon, *and* he *controlled some trading in the Calgon account*"), and id. ¶ 53 ("Berlinger played a critical role in creating and *controlling* . . . Westpark . . . . He opened [a] brokerage account[] in [its] name over which he had sole dispositive

---

[2] The SEC's use of the Jersey Financial Services Commission proceeding against Sun as an excuse for the lack of factual allegations against him in the Complaint is illogical (Opp. Br. 3). If it is true that "Sun's role in the scheme had to be concealed" because of that proceeding (id.), why was Sun allegedly named as Westpark's owner? Moreover, all of the Defendants conducted their alleged activities through "offshore entities" similar to Westpark, regardless of alleged proceedings against them (id. 3-6).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

power, directing activity in the account[].")). The SEC's failure to allege Sun's control of Westpark in this paragraph should be seen for what it is: a concession that the SEC has no factual basis to support such an allegation.[3]

Similarly, where the SEC could allege that a Defendant was individually responsible for selling Jammin' Java stock, it did so (see, e.g., id. ¶ 41 (specifically alleging that Weaver and Berlinger "would sell shares of Jammin' Java that were acquired from Whittle")). Tellingly, nowhere in the Complaint does the SEC allege that *Sun* received, purchased, or sold Jammin' Java shares.

### III. THE SEC HAS NOT SHOWN SUN'S MINIMUM CONTACTS WITH THE UNITED STATES, AND THERE IS THUS NO PERSONAL JURISDICTION OVER HIM

The SEC's assertion of personal jurisdiction is premised entirely on its conclusory allegation of Sun's control over Westpark, and its conflation of allegations against Westpark with those against Sun (see Opp. Br. 10 (claiming that "Sun owned and controlled Westpark" and that "Sun's alleged trading activity supports a finding of personal jurisdiction.")). These allegations are insufficient to establish personal jurisdiction because the SEC bears the burden of demonstrating "jurisdictional facts," and "cannot simply rest on . . . bare allegations." Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002) (internal quotation marks and citation omitted).

The Complaint's only factual allegations concerning Westpark's trading

---

[3] The SEC does not address Sun's argument that his relationship to Cilitz is insufficiently alleged to establish his liability for Cilitz's conduct (see Opening Br. 15-16, 20, 22-23), and the SEC does not mention Cilitz at all in its sections concerning personal jurisdiction, liability under Section 5 of the Securities Act, or liability under Section 10(b) of the Exchange Act. The SEC has therefore conceded that Sun is not liable for Cilitz's alleged conduct, and that he is not a beneficial owner of its Jammin' Java shares. Silva v. U.S. Bancorp, No. 5:10-CV-01854-JHN, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotation marks and citation omitted)).

11425824 Defendant Sun's Reply

activity establish that ***Berlinger***—not Sun—conducted all such activity and committed every act necessary to facilitate it, including controlling Westpark's brokerage account, executing stock purchase agreements on Westpark's behalf, and handling "other aspects in connection with the transfer of shares" (Compl. ¶¶ 53, 55(c)). There is no factual allegation that Sun took any action with respect to Westpark's Jammin' Java transactions, nor that he directed Berlinger in any of those activities, or even that he knew of Berlinger's activities. Accordingly, the Complaint does not allege Sun's "purposeful availment" of the United States, nor his "purposeful direction" towards the United States, and the SEC may not establish personal jurisdiction over ***Sun*** solely by reference to its factual allegations against ***Berlinger***. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (The "purposeful availment" requirement is meant to ensure "that a defendant will not be haled into a jurisdiction solely as a result of . . . ***attenuated contacts*** . . . or of the ***unilateral activity of another party*** or a third person." (emphasis added) (internal quotation marks and citations omitted)).

While the SEC notes that it could not find "any case where a court has found personal jurisdiction lacking as to a foreign defendant accused of placing illegal trades on a U.S. market" (Opp. Br. 10), the Complaint does not allege that Sun placed any trades, illegal or otherwise, on the U.S. market (<u>see</u> Section II).[4] And again, the SEC's allegations against Westpark and Berlinger may not be treated as though they were made against Sun.

Moreover, to the extent the SEC is taking the position that personal jurisdiction

---

[4] The cases the SEC cites are inapposite because the Complaints in those cases attributed specific conduct to the foreign defendants, and did not impermissibly bootstrap jurisdiction by relying on conduct that was alleged against other actors or entities. <u>See, e.g.</u>, <u>S.E.C. v. Euro Sec. Fund</u>, No. 98 CIV. 7347 (DLC), 1999 WL 76801, at *3 (S.D.N.Y. Feb. 17, 1999) (noting that though defendants "argue that their status as corporates officers . . . is insufficient to create personal jurisdiction over them . . . their liability is predicated on the SEC's allegations that ***they themselves*** . . . purchased or caused to be purchased . . . stock in violation of the Sections 10(b) and 14(e) of the Exchange Act." (emphasis added)).

11425824                                                                                                        Defendant Sun's Reply

over Sun can be premised solely on his alleged *ownership* of Westpark (see Opp. Br. 10 n.3), courts have specifically rejected such arguments. See, e.g., S.E.C. v. Alexander, No. 1:00-cv-07290 (LTS) (HBP), 2003 WL 21196852, at *3 (S.D.N.Y. May 20, 2003) (finding personal jurisdiction lacking where SEC "allege[d] solely that [a *co-defendant*] traded in [U.S. securities] through an account held in the name of [*defendant*]," and there were "no allegations that [defendant] engaged in insider trading, or even that [defendant] traded in securities at all." (emphasis added)); see also Olenicoff v. UBS AG, No. SACV 08-1029 AG RNBX, 2010 WL 8530286, at *8-9 (C.D. Cal. Mar. 16, 2010) (finding personal jurisdiction lacking over foreign officers and directors of foreign bank implicated in "pump and dump" scheme where the sole individualized allegations against the foreign defendants were that they: 1) resided abroad; 2) were officers, managers, or directors of the allegedly offending bank; and 3) "conducted business in the U.S."); S.E.C. v. Sharef, 924 F. Supp. 2d 539, 547 (S.D.N.Y. 2013) (noting that jurisdiction based on "effects" in United States "need[s] . . . a limiting principle," and finding personal jurisdiction lacking over foreign corporate officer who "encourage[ed]" affiliate to make certain bribes, but did not himself authorize them, and did not direct, or even know about, alleged falsification of SEC filings in the United States in connection with the bribes.).  Thus, the Complaint must be dismissed as against Sun for lack of personal jurisdiction.

## IV.     THE SEC FAILS TO STATE A SECTION 5 CLAIM

### A.     The Complaint Does Not Allege That Sun Directly Sold Any Stocks

Though the SEC now seeks to impermissibly interject Sun into allegations that the Complaint makes against Westpark (see, e.g., Opp. Br. 11 ("Westpark (Sun) obtained 2.89 million shares of Jammin' Java stock")), the Complaint does not contain any allegations that Sun himself directly offered or sold Jammin' Java securities (Compare Compl. ¶ 41 (specifically alleging that Weaver and Berlinger "would sell shares of Jammin' Java that were acquired from Whittle"), and id. ¶¶ 52(b), 53 (specifically alleging that Weaver and Berlinger controlled and directed trading in

various entities' brokerage accounts, including Westpark), with id. ¶ 52(a) (merely alleging Sun's ownership of Westpark); see also Section II).

In an attempt to avoid this Circuit's stringent test for participant liability, see S.E.C. v. Murphy, 626 F.2d 633, 648 (9th Cir. 1980) (A party's "role in the transaction must be a significant one before [Section 5] liability will attach."), the SEC completely ignores the cases Sun cited which apply the "necessary participant and substantial factor" test in situations analogous to this one.[5]  See, e.g., Rosen, 2002 WL 34421029, at *4-5 (finding that where an entity executes securities transactions through a brokerage account held in its own name, the entity is the direct seller; and applying the "necessary participant and substantial factor" test to determine the principal's liability as an indirect seller); Reynolds, 2013 WL 3778830, at *4-5 (applying "necessary participant and substantial factor" test to principal who used entities of which he was the sole owner and employee to execute securities transactions in violation of Section 5 of the Securities Act).

Moreover, the SEC cites SEC v. Blackburn for the proposition that the "necessary participant and substantial factor" test is "irrelevant" where the SEC alleged that the defendant directly sold securities" (Opp. Br. 12).  2015 WL 9459976, *12 (E.D. La. Dec. 28, 2015).  The SEC's reliance on Blackburn is misplaced.  In Blackburn, unlike here, the SEC truly did allege that the named defendant *individually and directly* sold securities.  Id. (noting that "the SEC claims that Schlesinger [the

---

[5] The SEC also wrongly states that "[t]o the extent that Sun is arguing that his use of a corporate shell somehow immunizes him from liability for a direct sale, he has cited no case to support that proposition" (Opp. Br. 12 n.4).  First, Sun cited to at least two cases, Rosen and Reynolds, which apply the "necessary participant and substantial factor" test to determine the liability of owners accused of using shell corporations to execute securities transactions in violation of Section 5 of the Securities Act.  Second, Sun does not contend that a shell corporation "immunizes" a defendant from liability, but merely makes the wholly unremarkable argument that, to hold an individual liable for a Section 5 violation, the SEC must meet its burden to show that the individual, as opposed to an entity, engaged in culpable conduct.

defendant] directly sold or offered to sell unregistered Treaty securities"). In fact, the Complaint in <u>Blackburn</u> alleged that "Schlesinger purchased 20,000,000 shares from treaty . . . with money he borrowed from his mother. Later, Schlesinger sold the shares for a net profit of $188,668." <u>See</u> First Amended Complaint ¶ 86, <u>SEC v. Blackburn</u>, 2015 WL 9459976 (E.D. La. Dec. 28, 2015) (No. 2:15-cv-02451) (attached as Exhibit A to the Loya Decl.). <u>Blackburn</u> supports Sun's position, and underscores Sun's basic point, that the SEC cannot rest its case on allegations of "ownership" alone. Unlike <u>Blackburn</u>, the Complaint here does not allege that Sun directly sold any Jammin' Java shares. All securities transactions are attributed to Westpark—not Sun—and all of Westpark's conduct is attributed to Berlinger. Accordingly, the SEC has not alleged that Sun "directly" offered or sold securities.

### B. The SEC Fails to Allege Sun Was A Necessary Participant And Substantial Factor In Westpark's Alleged Transactions

The Ninth Circuit has held that "[b]ecause Section 5 imposes strict liability for violations of its registration requirement . . . it is particularly important that the necessary participant and substantial factor test be carefully applied to each case so as not to subject defendants with a de minimis or insubstantial role in a securities scheme to strict liability." <u>S.E.C. v. CMKM Diamonds, Inc.</u>, 729 F.3d 1248, 1257 (9th Cir. 2013). To establish Sun's liability under Section 5, the SEC must allege his *individual role* in Westpark's Jammin' Java transaction. <u>CMKM Diamonds, Inc.</u>, 729 F.3d at 1258 (the determinative question under Section 5 is the "role the defendant *actually* played in the scheme at issue." (emphasis added)). Rather than alleging Sun's role, however, the Complaint only alleges Berlinger's "critical role" in executing every aspect of Westpark's transactions (Compl. ¶¶ 52(a), 53, 55(c)). After setting aside the Complaint's conclusory and generalized allegations of Sun's control (<u>see, e.g.</u>, <u>id.</u> ¶¶ 54, 77), as the Court must do, the Complaint is devoid of any allegations establishing that Sun played any role in Westpark's alleged transactions, let alone a sufficiently "significant" role to label him a "necessary participant and

substantial factor" in such transactions (see Opening Br. 17-19).  Accordingly, the Complaint fails to state a claim against Sun under Section 5 of the Securities Act.

## V. THE SEC FAILS TO STATE A SECTION 13(D) CLAIM

Since the SEC's Opposition Brief fails to rebut the substance of Sun's arguments regarding Cilitz, the SEC has conceded the point that Sun is not a beneficial owner of Cilitz's Jammin' Java shares for purposes of Section 13(d)'s reporting requirement (see footnote 3 above).[6]  Accordingly, even if Sun could be deemed a beneficial owner of Westpark's Jammin' Java stocks (which, for reasons explained in Sun's Opening Brief, he cannot (Opening Br. 21-22)), Westpark never held more than 5% of Jammin' Java's stock and thus the Complaint does not adequately allege that Sun was obligated to report his beneficial ownership.

Moreover, to establish Sun's liability under a "group" theory the SEC must provide factual allegations of a group, *and* Sun's membership in it.  Schaffer ex rel. Lasersight Inc. v. CC Investments, LDC, 115 F. Supp. 2d 440, 443-44 (S.D.N.Y. 2000) (dismissing claim at motion to dismiss stage where plaintiff failed "to set forth sufficient evidence" of group).  Instead, the SEC seeks to establish Sun's membership in a "group" for purposes of Section 13(d) liability simply by reference to allegations that *Westpark* acted in coordination with other Defendants or entities (Opp. Br. 14-15 (alleging coordination between Westpark and other intermediaries)).  This argument is foreclosed by the SEC's failure (discussed above in Section II) to sufficiently allege that Sun—rather than Berlinger—controlled Westpark.

---

[6] To the extent the SEC briefly mentions Cilitz in its Opposition Brief, it merely modifies the Complaint's allegations to now contend that "Sun (or those acting at his direction) owned and controlled Cilitz" (Opp. Br. 14).  The Complaint, however, never alleges that Sun "owned" Cilitz (Compl. ¶ 55(b), 82(b)).  Moreover, the Complaint alleges that Cilitz was controlled by "Sun or others *working with him*" (id. ¶ 55(b)), and not by "Sun (or those *acting at his direction*)" (Opp. Br. 14).  Regardless of these impermissible modifications, the allegations are still entirely conclusory and insufficient to establish Sun's ownership or control over Cilitz, or his beneficial ownership of Cilitz's Jammin' Java shares.

Sun does not attribute the SEC's alleged coordination to "coincidence," as the SEC misrepresents (Op. Br. 16)—rather, the Complaint demonstrates that Berlinger created and controlled many of the intermediary entities, and directed their transactions in Jammin' Java shares (see, e.g., Compl. ¶ 53).  Similarly, the SEC's allegations show that Berlinger played a key role in nearly all stages of the alleged scheme, including going so far as to allegedly negotiate the Straight Path financing agreement under a pseudonym, and to then create Straight Path and direct funds from the brokerage accounts he controlled back to Jammin' Java (id. ¶¶ 43-44, 104-7).  The Court should reject the SEC's attempt to recast Berlinger in a peripheral role in order to attribute Westpark's actions to Sun.  The Complaint tells a different story.

## VI. THE SEC FAILS TO STATE A SECTION 10(B) CLAIM

### A. The SEC Misstates The Applicable Pleading Standards

First, while the SEC may allege scienter generally, it may no longer do so in purely conclusory fashion.  See Opp. Br. 18-19; but see S.E.C. v. Fraser, No. CV-09-00443-PHX-GMSC, 2009 WL 2450508, at *12 (D. Ariz. Aug. 11, 2009) ("the Ninth Circuit's statement that 'plaintiffs need simply say that scienter existed to satisfy the requirements of Rule 9(b),' . . . is not fully descriptive of the pleading requirements in light of *Iqbal*—a plaintiff, of course, must still provide a sufficient factual context to render a finding of scienter plausible." (internal citation omitted)).  Because the SEC's allegations concerning Sun's participation in the alleged scheme are entirely conclusory, they fail to meet this standard (see Opening Br. 12-17).

Second, the SEC's attempt to rely on Wool v. Tandem Computers, Inc.'s "group-published information" doctrine to reduce its burden under Rule 9(b) to make particularized allegations with respect to Sun is wholly misplaced (Opp. Br. 16-17).  818 F.2d 1433, 1439-40 (9th Cir. 1987).  The group-published information doctrine is only applicable to allegations of fraud based on a corporation's ***misstatements*** that can be attributed to a "narrowly defined group" of officers and directors within that corporation.  Akers v. United States, No. CIV. 01-1348-HU, 2002 WL 32512845, at

*4 (D. Or. Apr. 3, 2002). Sun is not charged with any misstatements, and the group-published information doctrine is irrelevant here. Accordingly, the SEC must plead Sun's role in the alleged scheme with particularity.

### B. The Complaint Fails to Meet Rule 9(b)'s Strict Pleading Standard

Setting aside conclusory and nonspecific allegations of "control" or "coordination," the Complaint does not attribute a single action or direction to Sun. Because the Complaint does not allege Sun's role in Westpark's alleged conduct, or his role in any other part of the alleged scheme (see, e.g. Compl. ¶¶ 41-49 (conclusorily alleging that Sun was involved in Straight Path agreement, but failing to allege a single action taken by him)), it fails to meet Rule 9(b)'s heightened pleading standard and fails to state a claim under Section 10(b) (see Opening Br. 12-17).

### VII. THE COURT SHOULD DISMISS WITH PREJUDICE

As Sun has no ties to this forum, and litigating in this forum imposes a heavy burden on him, he would suffer undue prejudice if the SEC were given an opportunity to amend the Complaint. Therefore, the Complaint should be dismissed with prejudice. Nat'l Council of La Raza v. Cegavske, 800 F.3d 1032, 1042 (9th Cir. 2015) (listing grounds for dismissal with prejudice, including undue prejudice to defendant).

### VIII. CONCLUSION

For the reasons stated above and in the Opening Brief, the Court should grant Defendant Sun's motion to dismiss under Rules 12(b)(2), 12(b)(6) and 9(b).

Dated: May 9, 2016   Respectfully submitted,

VENABLE LLP
By: /s/ Edward J. Loya, Jr.
    Edward J. Loya, Jr.
    Jessie F. Beeber (Admitted *Pro Hac Vice*)
    Patrick J. Boyle (Admitted *Pro Hac Vice*)
Attorneys for Defendant Michael K. Sun

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900