Edward J. Loya, Jr. (State Bar No. 257346)
    *eloya@venable.com*
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:   (310) 229-9900
Facsimile:    (310) 229-9901

Jessie F. Beeber (Admitted *Pro Hac Vice*)
    *jbeeber@venable.com*
Patrick J. Boyle (Admitted *Pro Hac Vice*)
    *pboyle@venable.com*
VENABLE LLP
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone:   (212) 307-5500
Facsimile:    (212) 307-5598

*Attorneys for Defendant Mohammed A. Al-Barwani*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:15-CV-08921-SVW-MRW |
| Plaintiff, | Hon. Stephen V. Wilson |
| v. | **DEFENDANT MOHAMMED A. AL-BARWANI'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 12(B)(2); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| JAMMIN' JAVA CORP., dba MARLEY COFFEE, SHANE G. WHITTLE, WAYNE S. P. WEAVER, MICHAEL K. SUN, RENE BERLINGER, STEPHEN B. WHEATLEY, KEVIN P. MILLER, MOHAMMED A. AL-BARWANI, ALEXANDER J. HUNTER, and THOMAS E. HUNTER, | |
| Defendants. | Hearing:        June 20, 2016<br>Time:            1:30 p.m.<br>Courtroom:    No. 6<br><br>Action filed:   November 17, 2015<br>Trial date:      October 25, 2016 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

TO THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 20, 2016 at 1:30 p.m., or as soon thereafter as counsel may be heard, in the above-captioned matter before the Honorable Stephen V. Wilson, United States District Judge, at 312 N. Spring St., Los Angeles, CA 90012, Defendant Mohammed A. Al-Barwani shall and hereby does move to dismiss the sole claim made against him, namely the First Claim for Relief in the Securities and Exchange Commission's ("Plaintiff" or the "SEC") Complaint (Docket No. 1), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2) on the grounds of failure to state a claim against Defendant Al-Barwani for violations of Sections 5(a) and (c) of the Securities Act and lack of personal jurisdiction.  This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 5, 2016.  This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed herewith, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court before or at the time of the hearing.


Dated:  May 12, 2016          Respectfully submitted,

VENABLE LLP


By:   */s/ Edward J. Loya, Jr.*
       Edward J. Loya, Jr.
       Jessie F. Beeber (Admitted *Pro Hac Vice*)
       Patrick J. Boyle (Admitted *Pro Hac Vice*)
       *Attorneys for Defendant Mohammed A. Al-Barwani*

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

## TABLE OF CONTENTS

Page

I.    Preliminary Statement ...................................................................................... 1

II.   Summary of Relevant Allegations ................................................................. 2

III.  Legal Standard .................................................................................................. 5

IV.   The SEC Fails to State a Claim Against Al-Barwani Under Section 5
      of the Securities Act ........................................................................................ 5

      A.    The Complaint Does Not Allege That Al-Barwani Directly Sold
            Any Securities ......................................................................................... 6

      B.    The SEC Fails to Show Al-Barwani Was a Necessary Participant
            and Substantial Factor in Renavial's Alleged Transactions .................... 6

V.    The Court Lacks Personal Jurisdiction Over Al-Barwani ............................. 9

      A.    Al-Barwani Does Not Have "Minimum Contacts" with the
            United States .......................................................................................... 10

            1.    Al-Barwani Did Not "Purposefully Avail" Himself of the
                  Privilege of Conducting Activities in the United States ................ 11

            2.    Al-Barwani Did Not "Purposefully Direct" Any Activities
                  at the United States ...................................................................... 13

      B.    Exercising Personal Jurisdiction over Al-Barwani Would be
            Unreasonable ......................................................................................... 15

VI.   The Court Should Dismiss With Prejudice ................................................... 16

VII.  Conclusion ...................................................................................................... 17

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009).................................................................................5

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)..............................................................................13

Core-Vent Corp. v. Nobel Indus. AB,
    11 F.3d 1482 (9th Cir. 1993) ...............................................................16

Dole Food Co. v. Patrickson,
    538 U.S. 468 (2003)................................................................................8

Dole Food Co. v. Watts,
    303 F.3d 1104 (9th Cir. 2002) .........................................................5, 15

Goodyear Dunlop Tires Operations, S.A. v. Brown,
    564 U.S. 915 (U.S. 2011) .....................................................................10

Int'l Shoe Co. v. Washington,
    326 U.S. 310 (1945)..............................................................................15

Morongo Band of Mission Indians v. Rose,
    893 F.2d 1074 (9th Cir. 1990) .............................................................16

Olenicoff v. UBS AG,
    No. SACV 08-1029 AG RNBX, 2010 WL 8530286 (C.D. Cal. Mar.
    16, 2010) .........................................................................................10, 13

Pac. Life Ins. Co. v. Spurgeon,
    319 F. Supp. 2d 1108 (C.D. Cal. 2004) ...............................................16

Rio Properties, Inc. v. Rio Int'l Interlink,
    284 F.3d 1007 (9th Cir. 2002) ...............................................................5

S.E.C. v. Alexander,
    160 F. Supp. 2d 642 (S.D.N.Y. 2001) .............................................13, 14

S.E.C. v. Alexander,
    No. 1:00-cv-07290 (LTS) (HBP), 2003 WL 21196852 (S.D.N.Y. May
    20, 2003) .........................................................................................12, 14

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

S.E.C. v. Calvo,
   378 F.3d 1211 (11th Cir. 2004) ......................................................... 6, 8

S.E.C. v. CMKM Diamonds, Inc.,
   729 F.3d 1248 (9th Cir. 2013) ........................................................... 5, 7

S.E.C. v. Murphy,
   626 F.2d 633 (9th Cir. 1980) ............................................................. 5, 8

S.E.C. v. Phan,
   500 F.3d 895 (9th Cir. 2007) .................................................................. 6

S.E.C. v. Reynolds,
   No. 3:08-CV-0438-B, 2013 WL 3778830 (N.D. Tex. July 19, 2013) ................. 6, 7

S.E.C. v. Rosen,
   No. 01-0369-CIV, 2002 WL 34421029 (S.D. Fla. Feb. 22, 2002) ........................ 6

S.E.C. v. Ross,
   504 F.3d 1130 (9th Cir. 2007) ........................................................... 9, 10

S.E.C. v. Sharef,
   924 F. Supp. 2d 539 (S.D.N.Y. 2013) ........................................... 13, 14, 15

Schwarzenegger v. Fred Martin Motor Co.,
   374 F.3d 797 (9th Cir. 2004) ......................................................... *passim*

Sec. Inv'r Prot. Corp. v. Vigman,
   764 F.2d 1309 (9th Cir. 1985) ................................................................. 9

Walden v. Fiore,
   134 S. Ct. 1115 (2014) ......................................................................... 13

World-Wide Volkswagen Corp. v. Woodson,
   444 U.S. 286 (1980) ...................................................................... 11, 12

**Statutes**

15 U.S.C. § 77e ...................................................................................... 5

15 U.S.C. § 77v ...................................................................................... 9

Exchange Act Section 27 ......................................................................... 9

Securities Act Section 5 ................................................................. 5, 6, 7, 9

V E N A B L E   L L P

2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Defendant Al-Barwani's Notice of Motion and Motion To Dismiss

Securities Act Section 22 ....................................................................................... 9

**Other Authorities**

Fifth Amendment ..................................................................................................... 9

Federal Rules of Civil Procedure Rule 12(b)(2) ..................................................... 5, 17

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................................... 5, 17

11220900

Defendant Al-Barwani's Notice of Motion and Motion To Dismiss

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Mohammed A. Al-Barwani ("Al-Barwani"), through his undersigned counsel, respectfully submits this memorandum of points and authorities in support of Al-Barwani's motion:

(1)     pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the sole claim made against him in the Complaint filed by the Securities and Exchange Commission ("Plaintiff" or the "SEC"), dated November 17, 2015, namely the First Claim for Relief brought under Section 5 of the Securities Act; and

(2)     pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the Complaint for lack of personal jurisdiction.

## I.   PRELIMINARY STATEMENT

The SEC's 132-paragraph Complaint in this action, against eleven separate defendants, alleges an elaborate $78 million "pump-and-dump" scheme that involved the use of at least ten different offshore entities to buy and sell Jammin' Java Corp. ("Jammin' Java") securities.

Defendant Mohammed Al-Barwani, a 72-year old citizen of Oman, is clearly an afterthought. Although the Complaint contains six different claims for relief (including two claims for fraud), Al-Barwani is only mentioned in one: the First Claim alleging violations of Section 5 of the Securities Act, which prohibits the unregistered offer or sale of securities.

A party's role in a transaction "must be a significant one before [Section 5] liability will attach," S.E.C. v. Murphy, 626 F.2d 633, 648 (9th Cir. 1980), and to play a "significant" role, the party must be "both a 'necessary participant' and 'substantial factor' in the sales transaction." S.E.C. v. Phan, 500 F.3d 895, 906 (9th Cir. 2007) (quoting Murphy, 626 F.2d at 648, 652).

Here, the Section 5 claim against Al-Barwani must fail, because the SEC has only alleged that Al-Barwani owned one of the offshore entities, Renavial Ltd. ("Renavial") (Compl. ¶ 52(b)). The SEC alleges that another defendant, René

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

Berlinger ("Berlinger"), was the one who actually created Renavial and controlled all aspects of its Jammin' Java transactions (id. ¶¶ 52(b), 53, 78(h), 82(c), 99, 104-7). The Complaint does not allege that Al-Barwani directly sold any securities, nor does it allege that he had any role in Renavial's alleged Jammin' Java transactions, let alone that he was a "necessary participant" and "substantial factor" in those transactions. Accordingly, the Complaint fails to state a claim against Al-Barwani under Section 5 of the Securities Act.

It is for this reason that Al-Barwani must be dismissed from this action for lack of personal jurisdiction as well. The SEC has not alleged any contacts between Al-Barwani and the United States. Instead, it bases personal jurisdiction over him solely on Berlinger's alleged conduct and contact with the United States. But because the "exercise of jurisdiction . . . must be based on ***intentional conduct by the defendant*** that creates the necessary contacts with the forum," Walden v. Fiore, 134 S. Ct. 1115, 1123 (2014) (emphasis added), not the actions of someone else, the SEC's theory of personal jurisdiction fails to comport with due process, and Al-Barwani should be dismissed.

## II.   SUMMARY OF RELEVANT ALLEGATIONS

The SEC alleges that Berlinger and others planned and orchestrated a pump-and-dump scheme involving Jammin' Java securities (Compl. ¶¶ 5-11). The alleged scheme spanned from at least 2008 to 2011 and was composed of numerous stages including:

- The Reverse Merger. A defendant named Shane Whittle ("Whittle") allegedly organized a reverse merger in February 2008 between GERC and Marley Coffee and subsequently created Jammin' Java in July 2009 (id. ¶¶ 27-28, 34);

- Consolidation of Nominee Shares. Whittle allegedly "secretly" acquired GERC nominee shares in early 2008, using several Panamanian entities (id. ¶¶ 30-32);

- The "Sham" Financing Arrangement. Whittle, another defendant named Wayne Weaver ("Weaver"), and Berlinger allegedly orchestrated a "sham" financing

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

arrangement using an entity called "Straight Path" in December 2010, to boost Jammin' Java's financial prospects and kick off the pump-and-dump scheme (id. ¶¶ 41-49);

- Formation of "Intermediary" Offshore Entities. Berlinger allegedly formed offshore "intermediary" entities from August through September 2010, for the purpose of receiving and selling Jammin' Java stock (id. ¶ 52);

- Transfers of Jammin' Java Shares. Whittle allegedly directed a first and second "wave" of transfers of Jammin' Java stock to numerous offshore entities in 2010 and 2011 (id. ¶¶ 55-59, 73-80);

- Fraudulent Press Releases and Newsletters. From January through May 2011, Whittle allegedly organized fraudulent press releases and, in coordination with two other defendants, Alexander and Thomas Hunter, created fraudulent newsletters aimed at promoting Jammin' Java stock and deceiving investors (id. ¶¶ 67-72; 83-93);

- Sale of Jammin' Java Shares. A number of entities allegedly controlled by various defendants (not including Al-Barwani) sold their Jammin' Java shares from January through May 2011 (id. ¶¶ 96-103); and

- Use of Trading Profits to Satisfy the "Sham" Financing Arrangement. Weaver and Berlinger allegedly used proceeds from the sale of Jammin' Java stock to pay off the "sham" financing arrangement (id. ¶¶ 104-107).

Al-Barwani is conspicuously absent from all of these allegations. There is no allegation that he was involved in the formation of Jammin' Java, the Straight Path financing, the creation of any offshore entities, or the purchase, sale or promotion of any Jammin' Java securities.

Instead, all the SEC alleges is that Al-Barwani is a 72 year-old citizen and resident of Oman (id. ¶ 19); and that he owned a foreign entity named Renavial (id. ¶ 52(b)), which Berlinger created, controlled, and used to facilitate transactions involving Jammin' Java securities (see, e.g., id. ¶¶ 52(b), 53, 78(h), 82(c), 99).

V E N A B L E L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

Though the SEC alleges that Al-Barwani *owned* Renavial—and it seeks to hold him liable for Renavial's alleged unregistered offer and sale of Jammin' Java securities—it does not allege that Al-Barwani *controlled* Renavial (see id. ¶ 99 (majority of unregistered sales of Jammin' Java securities "can be attributed to entities *controlled* by Weaver, Sun, and Berlinger and *owned* by Miller, Al-Barwani, Sun, Weaver, and Wheatley.").

Instead, the Complaint methodically sets out numerous factual allegations demonstrating that Berlinger—and not Al-Barwani—actually controlled Renavial and directed its transactions in Jammin' Java securities. Specifically, the Complaint alleges that:

- Berlinger created and controlled Renavial (id. ¶¶ 52(b), 53, 82(c), 99);
- Berlinger served as Renavial's "sole officer or one of [its] officers" (id. ¶ 53);
- Berlinger opened Renavial's brokerage account, "over which he had sole dispositive power, directing activity in the account[]" (id. ¶¶ 52(b), 53);
- Berlinger "signed resolutions, exchanged correspondence, and handled other aspects" of Renavials' transfer of Jammin' Java shares (id. ¶¶ 53, 78(h)); and
- Berlinger "directed the proceeds from the subsequent sale of Jammin' Java stock by [Renavial]," including the transfer of funds from Renavial's account to Jammin' Java in order to finance the Straight Path financing arrangement (id. ¶¶ 53, 104-7).

There is no allegation that Al-Barwani was aware of Berlinger's alleged activities with respect to Renavial, nor that he directed Berlinger, or anyone else, to take any actions with respect to Renavial (see, e.g., ¶ 99).

Finally, there is no allegation that Al-Barwani received any proceeds from Renavial's, or any other entity's alleged sale of Jammin' Java securities. The Complaint merely alleges that some trading profits were "consolidated" in Renavial's account, and that it was Berlinger, not Al-Barwani, who had *sole* power over the account (id. ¶¶ 53, 101).

In sum, the SEC does not specifically attribute a single action in the Complaint

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

4

1  to Al-Barwani, nor does it allege that he was aware of, or benefited from, a single

2  transaction alleged in the Complaint.

## III.   LEGAL STANDARD

4        To survive this motion to dismiss under Rule 12(b)(6), the SEC must set forth

5  "sufficient factual matter" with respect to Al-Barwani to state "a claim to relief that is

6  plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)  (quoting Bell Atl.

7  Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "[N]aked assertions devoid of further

8  factual enhancement" will not suffice to state a plausible claim for relief, as pleadings

9  that "are no more than conclusions, are not entitled to the assumption of truth." Iqbal,

10  556 U.S. at 678-79 (internal quotation marks and citation omitted).

11        To overcome this motion to dismiss pursuant to Rule 12(b)(2), the SEC must

12  make a prima facie showing of personal jurisdiction over Al-Barwani.  Rio Properties,

13  Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).  In making its prima

14  facie showing, the SEC bears the burden of demonstrating "jurisdictional facts," and

15  "cannot simply rest on the bare allegations of its complaint." Dole Food Co. v. Watts,

16  303 F.3d 1104, 1108 (9th Cir. 2002) (internal quotation marks and citation omitted).

## IV.   THE SEC FAILS TO STATE A CLAIM AGAINST AL-BARWANI UNDER SECTION 5 OF THE SECURITIES ACT

19        The SEC's sole claim for relief against Al-Barwani alleges that he violated

20  Section 5 of the Securities Act (Compl. ¶¶ 112-114).  Section 5 prohibits any person

21  from offering or selling a security in interstate commerce unless it is registered.  15

22  U.S.C. § 77e.  "To establish a prima facie case for violation of Section 5, the SEC

23  must show that (1) no registration statement was in effect as to the securities; (2) the

24  defendant directly or indirectly sold or offered to sell securities; and (3) the sale or

25  offer was made through interstate commerce." S.E.C. v. CMKM Diamonds, Inc., 729

26  F.3d 1248, 1255 (9th Cir. 2013).  A party's "role in the transaction must be a

27  significant one before [Section 5] liability will attach." Murphy, 626 F.2d at 648.  To

28  play a "significant" role in a transaction, a party must be "both a 'necessary

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1 participant' and 'substantial factor' in the sales transaction." <u>Phan</u>, 500 F.3d at 906

2 (quoting <u>Murphy</u>, 626 F.2d at 648, 652).

### A.   The Complaint Does Not Allege That Al-Barwani Directly Sold Any Securities

The Complaint does not allege that Al-Barwani himself directly offered or sold

securities (<u>compare</u> Compl. ¶ 41 (specifically alleging that Weaver and Berlinger

"would sell shares of Jammin' Java that were acquired from Whittle"), <u>and</u> <u>id.</u> ¶¶

52(b), 53 (specifically alleging that Weaver and Berlinger controlled and directed

trading in various entities' brokerage accounts, including Renavial), <u>with</u> <u>id.</u> ¶ 52(b)

(merely alleging Al-Barwani's ownership of Renavial); <u>see also</u> Sections II, V(A)).

Nor can Al-Barwani be treated as a direct seller for purposes of Section 5

liability solely on the basis of his alleged ownership of Renavial.  <u>See, e.g.</u>, <u>S.E.C. v.</u>

<u>Rosen</u>, No. 01-0369-CIV, 2002 WL 34421029, at *4 (S.D. Fla. Feb. 22, 2002)

(finding that where entity sells shares held in its own brokerage account, the entity is

deemed the direct seller; owner of entity may only be held liable under Section 5 if he

is a "necessary participant" and "substantial factor" in the transaction), <u>aff'd in part</u>

<u>sub nom.</u> S.E.C. v. Calvo, 378 F.3d 1211 (11th Cir. 2004); <u>S.E.C. v. Reynolds</u>, No.

3:08-CV-0438-B, 2013 WL 3778830, at *4-5 (N.D. Tex. July 19, 2013) (same).

As Al-Barwani is not alleged to have directly offered or sold any securities,

before the SEC can hold Al-Barwani liable for the Jammin' Java transactions

Berlinger executed using Renavial's brokerage account, it must show that Al-Barwani

was a "necessary participant and substantial factor" in those transactions.

### B.   The SEC Fails to Show Al-Barwani Was A Necessary Participant And Substantial Factor In Renavial's Alleged Transactions

In order to attach Section 5 liability, the SEC must show, through reference to

Al-Barwani's actions, that Al-Barwani was both a "necessary participant" and

"substantial factor" in Renavial's alleged transactions.  <u>See</u> <u>Phan</u>, 500 F.3d at 906; <u>see</u>

<u>also</u> <u>Rosen</u>, 2002 WL 34421029, at *4; <u>Reynolds</u>, 2013 WL 3778830, at *4-5.

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   The Ninth Circuit has held that "[b]ecause Section 5 imposes strict liability for

2   violations of its registration requirement . . . it is particularly important that the

3   necessary participant and substantial factor test be carefully applied to each case so as

4   not to subject defendants with a de minimis or insubstantial role in a securities scheme

5   to strict liability." S.E.C. v. CMKM Diamonds, Inc., 729 F.3d 1248, 1257 (9th Cir.

6   2013). "A participant's title, standing alone, cannot determine liability under Section

7   5, because the mere fact that a defendant is labeled as an issuer, a broker, a transfer

8   agent, a CEO, a purchaser, or an attorney, does not adequately explain what role the

9   defendant actually played in the scheme at issue." Id. at 1258. Instead, to establish

10   Al-Barwani's liability under Section 5, the SEC must allege his actual individual role

11   in Renavial's Jammin' Java transactions. Id. (the determinative question under

12   Section 5 is the "role the defendant actually played in the scheme at issue.").

13   Before the owner of a company can be held individually liable under Section 5

14   for the company's unregistered offer or sale of securities, the owner must be shown to

15   have been a "necessary participant" and "substantial factor" in the transaction through

16   conduct such as (1) opening or managing the brokerage account used for the purchase

17   or sale of the securities; (2) selling or instructing others to sell the securities; (3)

18   negotiating or executing share purchase agreements or similar documents to effect the

19   sale; and/or (4) receiving or managing the proceeds of the sale. See, e.g., Calvo, 378

20   F.3d at 1215 (SEC established a prima facie violation of Section 5 against co-owner of

21   entity involved in alleged pump-and-dump scheme, based on, among other things, the

22   owner having opened the entity's brokerage account, his execution of various

23   agreements to effect the sale of unregistered securities through the account, and his

24   receipt of the sales proceeds); see also Reynolds, 2013 WL 3778830, at *4-5 (SEC

25   established a prima facie violation of Section 5 against sole owner and employee of

26   entity involved in an alleged pump-and-dump scheme, based on the owner's role in

27   signing subscription agreements on the entity's behalf in connection with the purchase

28   of the unregistered securities at issue).

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

7

Here, the Complaint does not allege that Al-Barwani personally undertook any action to effect the offer or sale of Renavial's Jammin' Java shares.  Indeed, the SEC seems to go out of its way ***not*** to allege that Al-Barwani had any role in controlling or directing Renavial's transactions (<u>see</u> Compl. ¶ 99 (the unregistered sales of Jammin' Java securities "can be attributed to entities ***controlled*** by . . . Berlinger and ***owned*** by . . . Al-Barwani").

Instead, the Complaint alleges that it was Berlinger—not Al-Barwani—who acted as a "necessary participant" and "substantial factor" in Renavial's transactions. Since Berlinger had "sole dispositive power" over Renavial's brokerage account (<u>id.</u> ¶ 53), and "controlled" Renavial (<u>id.</u> ¶¶ 53, 82(c), 99), he was a "necessary participant" in Renavial's transactions.  <u>See</u> <u>Murphy</u>, 626 F.2d at 651 (The "necessary participant" prong is akin to "but for" causation, and asks whether "but for the defendant's participation, the sale transaction would not have taken place."); <u>see also</u> <u>Rosen,</u> 2002 WL 34421029, at *5 (finding that because defendant maintained sole legal authority over entity's brokerage account, "[h]is signature was a *sine qua non* of the transfers of the shares out of the . . . account.").  The Complaint also demonstrates Berlinger's role as a "substantial factor" in Renavial's transactions, in that he created Renavial and directed all actions on its behalf, including transferring shares into its name (<u>id.</u> ¶ 53 (alleging that Berlinger took every step necessary to execute Renavial's Jammin' Java transactions); <u>see</u> <u>also</u> <u>id.</u> ¶¶ 52(b), 78(h); Sections II, V(A)).  <u>Murphy</u>, 626 F.2d at 651 (The "substantial factor" prong is akin to a proximate causation, and "[b]efore a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction").

Moreover, the Court cannot "infer" from the mere allegation that Al-Barwani "owned" Renavial that he also controlled every aspect of it such that he can be held individually liable for Renavial's alleged securities transactions.  <u>See</u> <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468, 474-77 (2003) (noting that "[c]ontrol and ownership . . . are distinct concepts" and that the idea "that the corporation and its shareholders are

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11220900                                   Defendant Al-Barwani's Notice of Motion and Motion To Dismiss

1  distinct entities" is a "basic tenet of American corporate law").

2      Because the Complaint fails to allege that Al-Barwani was a necessary

3  participant and substantial factor in Renavial's alleged securities transactions, it fails

4  to state a claim against Al-Barwani under Section 5, and the Complaint should

5  therefore be dismissed in its entirety as against him.

6  **V.   THE COURT LACKS PERSONAL JURISDICTION OVER AL-BARWANI**

7

8      Section 22 of the Securities Act permits the exercise of personal jurisdiction

9  over foreign defendants, but "not beyond the bounds permitted by the due process

10 clause of the Fifth Amendment." Sec. Inv'r Prot. Corp. v. Vigman, 764 F.2d 1309,

11 1316 (9th Cir. 1985) (internal quotation marks omitted) (analyzing personal

12 jurisdiction under Section 27 of the Exchange Act); see also S.E.C. v. Ross, 504 F.3d

13 1130, 1140 (9th Cir. 2007) (finding Section 22 of the Securities Act and Section 27 of

14 the Exchange Act analogous for purposes of personal jurisdiction analysis); 15 U.S.C.

15 § 77v. Before the Court may exercise personal jurisdiction over Al-Barwani, a

16 stranger to this forum, the SEC must demonstrate that Al-Barwani has "at least

17 'minimum contacts' with the relevant forum such that the exercise of jurisdiction

18 'does not offend traditional notions of fair play and substantial justice.'"

19 Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004)

20 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In actions brought

21 under federal securities law, the relevant forum is the United States.  See Vigman, 764

22 F.2d at 1315-16.

23      Here, the SEC does not allege that Al-Barwani has any contacts with the United

24 States, and the exercise of personal jurisdiction over him would be entirely

25 unreasonable.  Thus, the Court lacks personal jurisdiction over Al-Barwani, and the

26 Complaint should be dismissed as against him.

27

28

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

9

## A.   Al-Barwani Does Not Have "Minimum Contacts" with the United States

"To determine whether the exercise of personal jurisdiction complies with due process, Courts look to whether a plaintiff has established a defendant's 'minimum contacts' with the forum under a theory of either general or specific jurisdiction." Olenicoff v. UBS AG, No. SACV 08-1029 AG RNBX, 2010 WL 8530286, at *7 (C.D. Cal. Mar. 16, 2010) (citing Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984)).  The SEC does not allege that Al-Barwani is subject to general jurisdiction in this forum, nor can it, as he is a citizen and resident of Oman with no alleged ties to the United States (Compl. ¶ 19).  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (U.S. 2011) (holding that the exercise of general jurisdiction over a foreign defendant requires a showing of such "systematic and continuous" contacts with the forum "as to render them essentially at home in the forum").

Instead, the SEC appears to rely on an attenuated theory of specific personal jurisdiction.  In order to subject a foreign defendant to specific personal jurisdiction in a forum, the plaintiff must demonstrate that: 1) the defendant purposefully directed his activities at the forum, "or perform[ed] some act by which he purposefully avail[ed] himself of the privilege of conducting activities in the forum"; and 2) the claim "arises out of or relates to the defendant's forum-related activities."  Schwarzenegger, 374 F.3d at 802; Ross, 504 F.3d at 1138 (same).

Though courts "often use the phrase 'purposeful availment,' in shorthand fashion, to include both purposeful availment and purposeful direction . . . availment and direction are, in fact, two distinct concepts."  Schwarzenegger, 374 F.3d at 802 (internal citations omitted).  As the Complaint does not specifically set forth an alleged basis for personal jurisdiction over Al-Barwani, it is unclear whether the SEC is relying on a theory of "purposeful availment" or "purposeful direction." Nevertheless, because the Complaint does not allege a single action that was taken or

11220900                    Defendant Al-Barwani's Notice of Motion and Motion To Dismiss

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

directed by Al-Barwani—let alone any action taken in the United Stated or directed at the United States—it fails to establish either "purposeful availment" or "purposeful direction," and therefore fails to establish personal jurisdiction over Al-Barwani.

### 1.   Al-Barwani Did Not "Purposefully Avail" Himself of the Privilege of Conducting Activities in the United States

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802.  The SEC makes no such allegations against Al-Barwani.  Rather, the SEC sole's allegations concerning Al-Barwani are that: 1) he is a 72 year-old citizen and resident of Oman (Compl. ¶ 19); and, 2) he "owned" Renavial, a foreign entity created and controlled by Berlinger (id. ¶¶ 52(b), 53).  The Complaint contains no factual allegations that Al-Barwani offered or sold—or directed anyone else to offer or sell—Jammin' Java securities, nor that he engaged in any other conduct by which he "purposefully avail[ed] [him]self of the privilege of conducting activities within the [United States]."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (internal quotation marks and citation omitted).

Instead, the Complaint sets forth specific allegations showing it was **Berlinger**, not Al-Barwani, who:

- created Renavial (id. ¶¶ 52(b), 53);
- "controlled or shared control of [Renavial]" (id. ¶ 82(c));
- served as Renavial's "sole officer or one of [its] officers" (id. ¶ 53);
- opened a brokerage account in Renavial's name "over which he had sole dispositive power, directing activity in the account[]" (id. ¶¶ 52(b), 53);
- "signed resolutions, exchanged correspondence, and handled other aspects" of Renavials' transfer of shares (id. ¶¶ 53, 78(h)); and
- "[i]n several instances," also "directed the proceeds from the subsequent sale of Jammin' Java stock by" entities including Renavial (id. ¶ 53; see also id. ¶¶ 53,

11220900                                   Defendant Al-Barwani's Notice of Motion and Motion To Dismiss

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

101 (alleging that some trading profits were consolidated in Renavial's account, and that Berlinger had *sole* power over the account); ¶¶ 104-7 (alleging that Berlinger and Weaver orchestrated the transfer of funds from Renavial to Jammin' Java to finance the Straight Path financing arrangement)).  There is no allegation that Al-Barwani directed Renavial's sales proceeds, or that he even received any proceeds.

The Complaint does not even allege that Al-Barwani was aware, or had any reason to be aware, of Renavial's alleged transactions involving Jammin' Java securities.

The SEC appears to suggest that Al-Barwani should have "reasonably anticipate[d] being haled into court [in the United States]," World-Wide Volkswagen Corp., 444 U.S. at 297, solely by virtue of his alleged ownership of Renavial—a foreign company that Berlinger created, controlled, and caused to execute transactions through a foreign brokerage account that Berlinger also created and controlled. However, courts have rejected the notion that a foreign defendant can be subjected to personal jurisdiction in the United States based solely on allegations that another party used an account held in that defendant's name to violate federal securities laws.  See, e.g., S.E.C. v. Alexander, No. 1:00-cv-07290 (LTS) (HBP), 2003 WL 21196852, at *3 (S.D.N.Y. May 20, 2003) (finding personal jurisdiction lacking where the SEC "allege[d] solely that [a co-defendant] traded in [U.S. securities] through an account held in the name of [defendant]," and there were "no allegations that [defendant] engaged in insider trading, or even that [defendant] traded in securities at all.").  Here, the SEC's allegations are even more tenuous than those in Alexander, as the account at issue was not held in Al-Barwani's name, but rather in Renavial's, an entity which, like its brokerage account, was controlled by Berlinger.

Similarly, courts have rejected the notion that a foreign defendant can be subjected to personal jurisdiction in the United States based solely on allegations concerning his or her title or position in a company accused of violating U.S.

securities law.  See, e.g., Olenicoff, 2010 WL 8530286, at *8-9 (finding personal jurisdiction lacking over certain foreign officers, managers and directors of a foreign bank implicated in a "pump and dump" scheme where the sole individualized allegations against the foreign defendants were that they: 1) resided abroad; 2) were officers, managers, or directors of the allegedly offending bank; and 3) "conducted business in the U.S.").  The Complaint's bare allegation that Al-Barwani "owned" Renavial is therefore patently insufficient to establish personal jurisdiction over him.

In sum, the SEC's remarkably attenuated theory of "purposeful availment" does not nearly comport with the strictures of due process, and the Complaint must be dismissed as against Al-Barwani for lack of personal jurisdiction.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (The "purposeful availment" requirement is meant to ensure "that a defendant will not be haled into a jurisdiction solely as a result of . . . attenuated contacts . . . or of the unilateral activity of another party or a third person." (internal quotation marks and citations omitted)); see also Walden, 134 S. Ct. at 1123 (The "exercise of jurisdiction . . . must be based on intentional conduct by the defendant that creates the necessary contacts with the forum.").

## 2.   Al-Barwani Did Not "Purposefully Direct" Any Activities at the United States

Purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum . . . ."  Schwarzenegger, 374 F.3d at 803.  It "is a principle that must be applied with caution, particularly in an international context."  S.E.C. v. Sharef, 924 F. Supp. 2d 539, 545 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); see also S.E.C. v. Alexander, 160 F. Supp. 2d 642, 655 (S.D.N.Y. 2001) (same).

The Ninth Circuit "evaluate[s] purposeful direction under [Calder's] three-part 'effects' test."  Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783 (1984)).  To satisfy the "effects" test, the SEC must show that Al-Barwani "(1)

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

13

1   committed an intentional act, (2) expressly aimed at the [United States], (3) causing

2   harm that [Al-Barwani] kn[ew] [was] likely to be suffered in the [United States].”

3   Schwarzenegger, 374 F.3d at 803 (internal quotation marks and citation omitted).  For

4   the reasons that follow, the SEC has failed to meet all three prongs of the “effects”

5   test, and has therefore failed to demonstrate any basis for the exercise of personal

6   jurisdiction over Al-Barwani.

7          First, as previously discussed, the Complaint fails to allege a single “act”—

8   intentional or otherwise—committed by Al-Barwani, or at Al-Barwani’s direction.

9   The Complaint does not allege that Al-Barwani took any part in Berlinger’s or

10  Renavial’s activities, nor that he directed them or had any power to direct them.  Thus,

11  the SEC has failed to establish the first prong of the “effects” test, which is fatal to any

12  assertion of personal jurisdiction over Al-Barwani on the basis of “purposeful

13  direction.”  Schwarzenegger, 374 F.3d at 805 (“All three parts of the [effects] test

14  must be satisfied.”).

15         Second, there is no allegation that Al-Barwani directed Berlinger to sell

16  Jammin’ Java securities into the United States, nor that he knew Berlinger would do

17  so, nor that he even knew of Jammin’ Java or where its securities were traded.  See

18  Schwarzenegger, 374 F.3d at 803 (the second and third prongs of the “effects” test

19  require that defendant “expressly” aim their act at the forum, and cause harm that they

20  know is likely to be suffered in the forum).

21         In Alexander, for instance, the court found that it lacked personal jurisdiction

22  over a foreign defendant who admitted to selling securities on the basis of insider

23  information, but who was unaware that the securities at issue were traded in the

24  United States.  160 F. Supp. 2d at 657.  Similarly, the court in Sharef—after noting

25  that jurisdiction based on “effects” in the United States “need[s] . . . a limiting

26  principle”—found that it lacked personal jurisdiction over a foreign corporate officer

27  who “encourage[ed]” an affiliate to make certain bribes, but who did not himself

28  authorize the bribes, nor direct, or even know about the alleged falsification of SEC

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

14

filings in the United States in connection with the bribes.  924 F. Supp. at 547.  Here, not only is there no allegation that Al-Barwani was aware of the Jammin' Java transactions at issue, there is certainly no allegation that he knew the transactions involved the United States in any way.   The SEC has thus failed to establish that Al-Barwani directed any act at the United States and that he knew such act would likely cause harm in the United States.

As the SEC has failed to establish even one prong of the "effects" test—let alone all three, as required—the Complaint must be dismissed as against Al-Barwani for lack of personal jurisdiction.

### B.   Exercising Personal Jurisdiction over Al-Barwani Would be Unreasonable

Even if the SEC were to establish that Al-Barwani possessed sufficient "minimum contacts" with the United States—which it cannot—the Court would still be precluded from exercising personal jurisdiction over him as it would be unreasonable and "offend traditional notions of fair play and substantial justice."  Int'l Shoe, 326 U.S. at 316; see also Dole Food Co. v. Watts, 303 F.3d 1104, 1114 (9th Cir. 2002) (setting out factors for reasonableness inquiry).

"[W]hen a defendant, is not located in the United States, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.'"  Sharef, 924 F. Supp. 2d at 548 (quoting Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 115 (1987)). Here, Al-Barwani has no ties to the United States, and only the most tangential connection to the allegations in the Complaint, which is evidenced both by the sparseness of the allegations concerning him, and by the SEC's decision to name him in only the first of the Complaint's six Claims (see Sections II, V(A); Compl. ¶¶ 112-14).  Exercising personal jurisdiction over Al-Barwani under these circumstances would thus be wholly unreasonable.  See, e.g., Sharef, 924 F. Supp. 2d at 548 (finding it unreasonable to exercise jurisdiction over 74 year-old German citizen with few ties

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

15

to the United States); <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482, 1488-90 (9th Cir. 1993) (finding it unreasonable to exercise jurisdiction over "Swedish doctors" who "are individuals with little or no physical contacts with California"); <u>Pac. Life Ins. Co. v. Spurgeon</u>, 319 F. Supp. 2d 1108, 1115 (C.D. Cal. 2004) (holding that exercising "jurisdiction would be particularly unreasonable in light of the burden placed on" individual defendants from Illinois, and noting that "[i]t is one thing to hale a large corporation doing nationwide business into a foreign forum; it is another to hale . . . individuals with no contacts or *de minimis* contacts into a forum." (emphasis in original)).

Because the exercise of personal jurisdiction over Al-Barwani would not comport with fair play and substantial justice, and would be unreasonable, the Complaint must be dismissed as against him for lack of personal jurisdiction.

## VI.   <u>THE COURT SHOULD DISMISS WITH PREJUDICE</u>

As Al-Barwani is a 72-year-old citizen and resident of Oman with no ties to this forum, the Complaint makes no substantive allegations against him individually, and litigating in this forum imposes a heavy burden on him, he would suffer undue prejudice if the SEC were given leave to amend the Complaint.  Therefore, the Complaint should be dismissed with prejudice.  <u>See</u> <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th Cir. 1990) (affirming denial of leave to amend complaint on the basis of factors including "prejudice to the defendants" and "the potential futility of the claims.")

///
///
///
///
///
///
///

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

16

## VII.   <u>CONCLUSION</u>

For the reasons explained above, the Court should grant Defendant Al-Barwani's motion to dismiss under Rules 12(b)(6) and 12(b)(2) with prejudice.

Dated:  May 12, 2016            Respectfully submitted,

VENABLE LLP

By:___*/s/ Edward J. Loya, Jr.*_____
        Edward J. Loya, Jr.
        Jessie F. Beeber (Admitted *Pro Hac Vice*)
        Patrick J. Boyle (Admitted *Pro Hac Vice*)
*Attorneys for Defendant Mohammed A. Al-Barwani*

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

11220900                        Defendant Al-Barwani's Notice of Motion and Motion To Dismiss