**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
MARGARET E. DAYTON (State Bar No. 274353)
pdayton@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone:  (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendant Wayne Weaver**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>        v.<br><br>JAMMIN' JAVA CORP., dba MARLEY COFFEE, SHANE G. WHITTLE, WAYNE S. P. WEAVER, MICHAEL K. SUN, RENE BERLINGER, STEPHEN B. WHEATLEY, KEVIN P. MILLER, MOHAMMED A. AL-BARWANI, ALEXANDER J. HUNTER, and THOMAS E. HUNTER,<br><br>        Defendants. | Case No. 2:15-cv-08921 SVW (MRWx)<br><br>Hon. Stephen V. Wilson<br><br>**DEFENDANT WAYNE WEAVER'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. PROC. 9(b), 12(b)(2), AND 12(b)(6)**<br><br>Date:           July 18, 2016<br>Time:           1:30 p.m.<br>Courtroom:   6<br><br>Trial Date:    October 25, 2016 |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ............................................................................... 1

II.  ARGUMENT ...................................................................................... 2

    A.   The SEC's Opposition Fails to Identify Any Conduct By Weaver That Forms the Basis of Jurisdiction Over Him or the SEC's Claims Against Him .......................................................................... 2

    B.   The Complaint Does Not Allege, and the Court Cannot Infer, That All Actions Attributed to Calgon In the Complaint Were Performed By Weaver ............................................................................ 4

    C.   The SEC Has Not Alleged Facts Supporting the Application of Alter Ego Liability .......................................................................... 7

    D.   The SEC is Not Entitled To Further Discovery ................................... 11

III. CONCLUSION ................................................................................ 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### <u>Federal Cases</u>

4

*Central States, Southeast & Southwest Areas Pension Fund v. Reimer*
5      *Express World Corp.,*
          230 F.3d 934 (7th Cir. 2000)..............................................................3, 11, 12

6
*Gerritsen v. Warner Bros. Entm't, Inc.,*
7          116 F. Supp. 3d 1104 (C.D. Cal. 2015)...............................................8

8  *Gerritsen v. Warner Bros. Entm't,*
          112 F. Supp. 3d 1011 (C.D. Cal. 2015)) ..............................................9
9

10 *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments,*
          553 F.3d 1351 (11th Cir. 2008)............................................................4
11
*Hokama v. E.F. Hutton & Co., Inc.,*
12         566 F. Supp. 636 (C.D. Cal. 1983)...............................................8, 13

13 *Houston v. Bank of Am., N.A.,*
14         No. 14-02786, 2014 WL 2958216 (C.D. Cal. June 25, 2014) ...............11

15 *Morongo Band of Mission Indians v. Rose,*
          893 F.3d 1074 (9th Cir. 1990).............................................................12
16

17 *NuCal Foods, Inc. v. Quality Egg LLC,*
          887 F. Supp. 2d 977 (E.D. Cal. 2012)...........................................*passim*
18
*Olenicoff v. UBS AG,*
19         No. 08-1029, 2010 WL 8530286 (C.D. Cal. Mar. 16, 2010)..................3

20 *Schneider v. California Dep't of Corr.,*
21         151 F.3d 1194 (9th Cir. 1998)................................................................7

22 *SEC v. CMKM Diamonds, Inc.,*
          729 F. 3d 1248 (9th Cir. 2013)..............................................................3
23

24 *SEC v. Ficeto,*
          839 F. Supp. 2d 1101 (C.D. Cal. 2011)................................................1
25

26 *Skydive v. Arizona, Inc. v. Quattrochi,*
          No. CV 05-2656, 2006 WL 2460595 (D. Ariz. Aug. 22, 2007) ............3, 7, 9
27

28 *Swartz v. KPMG,*
          476 F.3d 756 (9th Cir. 2007).................................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wady v. Provident Life and Accident Ins. Co. of Am.*,
   216 F. supp. 2d 1060 (C.D. Cal. 2002) ........................................................ 8

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ....................................................................... 12

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

I.        INTRODUCTION

The SEC asks this Court to infer – without factual or legal support – either (1) that conduct in its Complaint attributed to other individuals and entities is actually conduct by Weaver or (2) that the corporate form should be disregarded and all the corporate conduct of Calgon should be imputed to Weaver.  The SEC asks the Court to do so based on its bare allegation that Weaver "owned and/or controlled" Calgon, one of the entities that traded in Jammin' Java stock.  Harping on the standard for a motion to dismiss and imagined "reasonable inferences," the SEC's Opposition highlights the fatal flaw in its claims against Weaver:  the Complaint is devoid of facts detailing conduct by Weaver that subjects him to the personal jurisdiction of this Court or supports the SEC's claims against him.  The SEC's rhetoric regarding "offshore entities" cannot save it from the requirement that it allege *facts* supporting this Court's jurisdiction and its claims against Weaver.

In addition to the dearth of allegations pertaining to Weaver, the Complaint (the product of the SEC's five-year investigation) fails to allege with particularity a pump and dump scheme.  Although the SEC argues Defendants made "coordinated transfers" of Jammin' Java stock,[1] the SEC fails to identify any of the traditional indicia of manipulative trading[2] and says nothing about any connection between Weaver and the alleged false statements regarding Jammin' Java stock made by the

_____

[1] *E.g.*, Opp. at 6, 2.

[2] *Cf. SEC v. Ficeto*, 839 F. Supp. 2d 1101, 1104, 1105-06 (C.D. Cal. 2011) (SEC sufficiently alleged "pump and dump" scheme through manipulative trading by alleging that defendants engaged in matched orders, "marking the close" transactions, and wash trades, by providing appendices listing each allegedly fraudulent transaction, and by including detailed information regarding each defendant's role in the fraudulent transaction, specific acts that each defendant allegedly performed, and how those actions misled and manipulated the market).

Hunters.[3]  Nor does the Complaint identify the specific time and content of such representations.  Further the SEC claims to identify a so-called "sham" financing agreement, yet acknowledges the agreement was fully-funded.[4]  Thus, while the SEC tells a dramatic story regarding foreign companies and large transfers and sales of stock, it fails to describe a compelling case of stock market manipulation.

The SEC has conducted a five-year investigation of this matter during which it has acquired an investigative file that includes over 13 GB of "non-privileged" material, sought "discovery by informal means," "obtain[ed] documents from foreign securities regulators pursuant to various treaties and international memoranda of understanding," served formal discovery on several Defendants,[5] and entered into "a formal cooperation agreement" with Defendant Wheatley.[6]  Given the breadth of the SEC's investigation, its pleading failures are telling.  The Court should deny the SEC's request for jurisdictional discovery and dismiss the Complaint with prejudice.

II.     ARGUMENT

    A.     The SEC's Opposition Fails to Identify Any Conduct By Weaver That Forms the Basis of Jurisdiction Over Him or The SEC's Claims Against Him

As set forth in Weaver's Motion, the SEC fails to establish jurisdiction over Weaver or claims against him because it fails to identify any conduct to Weaver.

As to jurisdiction, the Complaint does not allege any conduct by Weaver directed towards the United States.  Personal jurisdiction must be "premised upon

---

[3] Compl. ¶¶ 83-93; Mot. at 2.

[4] Mot. at 4-6; Compl. ¶¶ 104-06.

[5] Leiman Decl. ISO Unopposed Request for Continuance (Doc. No. 105-6) ("Leiman Decl.") ¶¶ 5, 6, 6(a)-(f), 7.

[6] Mot. for Entry of Final Judgment (Doc. No. 101) ¶ 8.

1  forum-related acts personally committed by the individual." *Skydive v. Arizona, Inc.*

2  *v. Quattrochi*, No. CV 05-2656, 2006 WL 2460595, at *6 (D. Ariz. Aug. 22, 2007)

3  (citing *Kipperman v. McCone*, 422 F. Supp. 860, 873, n.14 (N.D. Cal. 1974))

4  (granting corporations' owners' motion to dismiss for lack of personal jurisdiction);

5  *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 997, 989-90 (E.D. Cal.

6  2012) ("mere ownership or control of an entity, even if that entity was responsible

7  [for the harm alleged] is insufficient to demonstrate" the minimum contacts required

8  for personal jurisdiction).  Yet the SEC has not alleged any actions personally taken

9  by Weaver directed at the forum.  (Mot. 7-9).  And, the SEC's conclusory

10  allegations that Weaver "controlled" or "owned" foreign entities that owned

11  Jammin' Java stock are insufficient to establish jurisdiction.  *See id.*; *see also*

12  *Olenicoff v. UBS AG,* No. 08-1029, 2010 WL 8530286, at *8-*9 (C.D. Cal. Mar. 16,

13  2010) (holding personal jurisdiction over foreign officers and directors of foreign

14  bank implicated in "pump and dump" scheme not established where sole allegations

15  were they (1) resided abroad; (2) were officers, managers, or directors of the

16  allegedly offending bank; and (3) "conducted business in the U.S."); *Central States,*

17  *Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230

18  F.3d 934, 943 (7th Cir. 2000) (corporate ownership alone is not sufficient for

19  personal jurisdiction); (Mot. at 6-9).  Therefore, the SEC has not established

20  personal jurisdiction over Weaver based on any forum-related contacts by him.

21      As to the Rule 10b-5 claim, the Complaint does not allege any acts by Weaver

22  that further the purported fraudulent pump-and-dump scheme.  Therefore, the claim

23  fails.  *See Swartz v. KPMG*, 476 F.3d 756, 764-65 (9th Cir. 2007) (the complaint

24  must allege the conduct and role of each defendant in the scheme); (Mot. at 10-15).

25      As to the Section 5 Securities Act claim, the Complaint does not allege

26  Weaver directly or indirectly sold any Jammin' Java securities.  Therefore, the claim

27  fails.  *See SEC v. CMKM Diamonds, Inc.*, 729 F. 3d 1248, 1255 (9th Cir. 2013) ("To

28  establish a prima facie case for a violation of Section 5, the SEC must show that (1)

1  no registration statement was in effect as to the securities; (2) the defendant directly

2  or indirectly sold or offered to sell securities; and (3) the sale or offer was made

3  through interstate commerce."); (Mot. at 16-18).

4          As to the Section 13(d) claim, the Complaint does not allege facts

5  demonstrating Weaver had a beneficial ownership of more than 5% of Jammin' Java

6  securities at any time.  Therefore, the claim fails.  *See Hemispherx Biopharma, Inc.*

7  *v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("a

8  beneficial ownership interest in securities is necessary to become a member of a

9  group within the meaning of Section 13(d)(3) of the Exchange Act."); (Mot. at 18-

10  21).

11          B.    <u>The Complaint Does Not Allege, and The Court Cannot Infer, That All
                  Actions Attributed to Calgon In the Complaint Were Performed By
12                Weaver</u>

13          The Opposition does not refute these points.  Instead, the SEC argues that it is

14  not required to allege any conduct by Weaver because the Court should "infer" that

15  all conduct by Calgon,[7] a separate corporate entity, is actually conduct by Weaver or

16  that all conduct by Calgon should be imputed to Weaver.[8]  Both arguments fail.

17

18  _____

19  [7] The Complaint alleges that Weaver "owned" and/or "controlled" three entities,
    Calgon, Donnolis, and Petersham, at some point in time.  (*Id.* ¶¶ 51, 52(c), 55(c)).
20  In Opposition, the SEC does not argue that Weaver's affiliation with Donnolis or
    Petersham supports its claims against Weaver.  (*See* Opp. at 10 (discussing conduct
21  by Calgon and stating, "setting aside actions of Weaver's other entities, those facts
    [pertaining to Calgon] are enough to establish this Court's personal jurisdiction over
22  Weaver."); *see generally* Opp. (mentioning Petersham and Donnolis only 6 and 5
23  times, respectively)).  In any event, the SEC's claims ostensibly premised on
    Donnolis and Petersham's conduct (to the extent the SEC still asserts them), fail for
24  the same reasons its claims premised on Calgon's conduct fail, as set forth in
25  Weaver's Motion and discussed below.

26  [8] Opp. at 11-12 (arguing "Calgon consummated the fraudulent scheme and
27  unregistered distribution" and Calgon's conduct forms the basis for jurisdiction over
28  (footnote continued)

1       The Complaint alleges that Calgon is a separate corporate entity, incorporated

2   in the Marshall Islands and formed by Defendant Berlinger.  (Compl. ¶ 52(b)).

3   Berlinger allegedly opened accounts in Calgon's name "over which he had *sole*

4   *dispositive power, directing activity in the accounts*," "signed resolutions,

5   exchanged correspondence, and handled other aspects in connection with the

6   transfer of shares involving [Calgon and other entities]."  (*Id.* ¶¶ 52(b), 53 (emphasis

7   added)).  The Complaint alleges that Berlinger served as the "sole officer or one of

8   the officers" for Calgon and "directed the proceeds from the subsequent sale of

9   Jammin' Java stock by [Calgon]."  (*Id.* ¶ 53).  Despite these allegations, the SEC

10   now asks the Court to "infer" that all actions taken by Calgon were actually actions

11   by Weaver based exclusively on its conclusory allegation that Weaver owned and/or

12   controlled Calgon.  (*See, e.g.*, Opp. at 1-2 (arguing for the "simple, reasonable

13   inference that individuals who own an offshore shell entity ultimately control it")).

14       The inference is not reasonable, given that the Complaint (which the SEC

15   drafted) does not attribute such conduct to Weaver, but instead, expressly attributes

16   it to Calgon and Berlinger.  Futilely attempting to cure this deficiency, the SEC

17   mischaracterizes its allegations:  the SEC now claims Weaver personally engaged in

18   the conduct, but the Complaint alleges otherwise.  For example, citing Paragraph 52

19   of the Complaint, the Opposition claims "Weaver, working with Berlinger, and

20   'working in concert' with his co-Defendants, *created a series of offshore entities*

21   through which they conducted their stock transfers."  (Opp. at 4 (citing Compl.

22   ¶52)).  In contrast, Paragraph 52 asserts that Berlinger alone formed Calgon.

---

24   Weaver), at 15 (arguing Calgon's acquisition and sale of securities is the basis of its

25   claim that Weaver violated Section 5), at 19 (arguing "a small group of foreign

26   intermediaries [including Calgon]" owning just under 5% of the stock establishes

27   Weaver's participation in a group for purposes of its Section 13(d) claim), at 20-21

   (arguing the corporate actions of Calgon and Blue Leaf establish the pump and

   dump scheme for purposes of its Section 10b-5 claim).

28

1  (Compl. ¶ 52(b) ("Berlinger formed two additional Marshall Islands entities,

2  Renavial Ltd. ('Renavial') and Calgon Invest, S.A. ('Calgon').")).  Similarly, the

3  Opposition asserts that "Weaver Sold Securities" arguing that "Calgon (Weaver)

4  obtained 3.36 million share of Jammin' Java stock and sold all of it to the public."

5  (Opp. at 15 (emphasis original)).  Yet, the Complaint alleges that Calgon acquired

6  and sold Jammin' Java stock.  (*See, e.g.*, Compl. ¶ 74, Fig. 3, Fig. 4).  It does not

7  allege that Weaver participated in – or even knew of – the sales of Jammin' Java

8  stock by Calgon (or Petersham or Donnolis). (*See* Mot. at 14-15).  Plainly, the

9  SEC's tactic of merely placing "Weaver" in parenthesis next to "Calgon" is

10  insufficient to impute Calgon's conduct to him and cannot resurrect the SEC's

11  deficient allegations.  Moreover, the Complaint alleges that Berlinger had "*sole*

12  *dispositive power*" and "*direct[ed] activity*" in Calgon's accounts and "directed the

13  proceeds from the subsequent sale of Jammin' Java stock by" Calgon.  (Compl. ¶ 53

14  (emphasis added)).

15      The SEC further claims the Complaint "expressly identifies <u>Weaver</u> when

16  identifying (a) the dumping of shares by Calgon (*E.g.*, Compl. ¶¶ 102), (b) control

17  of the shares (Compl. ¶ 77), and (c) the coordinated transfer and sale of stock

18  (Compl. ¶¶ 82(b), 99, 101-102)."  (Opp. at 6 (emphasis original)).  Yet an

19  examination of the Paragraphs cited in support reveals the Complaint does no such

20  thing:  (a) Paragraph 102 merely identifies Weaver as the owner of Calgon and says

21  nothing as to who directed the "dumping of shares"; (b) Paragraph 77 merely states,

22  "[s]everal of the entities that received stock were controlled by Weaver, Sun, and

23  Berlinger," and is refuted by Paragraph 53's claim that Berlinger had sole

24  dispositive power over the accounts; and (c) Paragraphs 82(b), 99, and 101-102 do

25  not allege that Weaver directed any sale or transfer of any of Calgon's Jammin' Java

26  stock.  No paragraph of the Complaint expressly identifies Weaver as an actor in the

27  transfer or sale of Jammin' Java shares.

28      The SEC cannot credibly claim that its Complaint "has pled sufficient facts to

apprise Weaver of the nature of its claims," (Opp. at 3), when it now argues the basis of those claims is conduct that it expressly attributed to other entities and individuals in the Complaint that *it drafted*.  Boiled down, the SEC's argument – that it wrote Calgon or Berlinger but really meant Weaver – cannot be countenanced.  Nor can the SEC amend its insufficient pleading through its opposition.  *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  The SEC's attempt to recharacterize its allegations in opposition to Weaver's motion to dismiss should be rejected.

C.   The SEC Has Not Alleged Facts Supporting the Application of Alter Ego Liability

Setting aside the SEC's unreasonable and unsupported inference that Weaver took actions alleged to be taken by Berlinger and Calgon, the SEC next asks the Court to infer – without factual or legal support – that the corporate form should be disregarded and Calgon's corporate conduct should be imputed to Weaver.  Indeed, the Opposition admits it does not premise Weaver's liability on Weaver's individual conduct, but rather on Calgon's actions and conduct.  (*See* footnote 8, *supra*).  For instance, the Opposition states "Calgon consummated the fraudulent scheme and unregistered distribution . . ." (Opp. at 11; *see also, e.g.*, *id.* at 10, ("Defendant Weaver owned and controlled Calgon, which in turn, conducted trading as part of a 'pump and dump' scheme . . .  Weaver's securities law violations culminated with Calgon's dumping of 3.36 million shares of that stock. . .")).  Yet, the SEC provides no basis for this Court to impute Calgon's conduct to Weaver.

"Disregarding the corporate entity is recognized as an extreme remedy, and courts will pierce the corporate veil only in exceptional circumstances." *NuCal Foods, Inc.*, 887 F. Supp. 2d at 993 (internal modifications, quotation marks, and citations omitted); *Skydive Arizona, Inc.*, 2006 WL 2460595, at *7 ("[T]he law will not lightly disregard the corporate status of a defendant.").  Under the alter ego doctrine, in certain "narrowly defined circumstances," "the court will disregard the

1   corporate entity and will hold the individual shareholders liable for the actions of the

2   corporation."[9] *Gerritsen v. Warner Bros. Entm't, Inc.*, 116 F. Supp. 3d 1104, 1136

3   (C.D. Cal. 2015) ("*Gerritsen II*") (internal quotation marks and citations omitted).

4        "Before the [alter ego] doctrine can be invoked, two elements *must be*

5   *alleged*:  'First, there must be such a unity of interest and ownership between the

6   corporation and its equitable owner that the separate personalities of the corporation

7   and the shareholder do not in reality exist.  Second, there must be an inequitable

8   result if the acts in question are treated as those of the corporation alone."  *Id.*

9   (emphasis added).  To allege the first element of alter ego liability, the plaintiff must

10  allege facts showing control by the dominant corporation or individual "to such a

11  degree as to render the latter the mere instrumentality of the former."  *NuCal Foods,*

12  *Inc.*, 887 F. Supp. 2d at 992.[10]

13       "Conclusory allegations of alter ego status are insufficient to state a claim.

14  Rather, a plaintiff must allege specific facts supporting both necessary elements."

15  *Gerritsen II*, 116 F. Supp. 3d at 1136; *Hokama v. E.F. Hutton & Co., Inc.*, 566 F.

16  Supp. 636, 647 (C.D. Cal. 1983) ("Defendants further argue that plaintiffs cannot

17  circumvent the requirements for secondary liability by blandly alleging that

18  [defendants] are 'alter egos' of other defendants accused of committing primary

19  violations.  This point is well taken . . . .  If plaintiffs wish to pursue such a theory of

20

---

21  [9] Although neither the Opposition nor the Complaint uses the phrase "alter ego," and
22  the SEC identifies no legal theory or authority to support its "inference" that
23  Calgon's conduct can be attributed to Weaver, this Reply assumes the SEC is
    attempting to invoke the alter ego doctrine.

24  [10] The alter ego analysis is the same regardless of whether an individual or an entity
25  is sought to be held liable for the acts of a corporation.  *Wady v. Provident Life and*
    *Accident Ins. Co. of Am.*, 216 F. supp. 2d 1060, 1067 (C.D. Cal. 2002) ("Only a
26  difference in wording is used in stating the concept where the entity sought to be
27  held liable is another corporation instead of an individual.") (citation omitted).

28

1  liability, they must allege the elements of the doctrine.  Conclusory allegations of

2  alter ego status such as those made in the present complaint are not sufficient.").

3        The Opposition does not even attempt to identify allegations in the Complaint

4  sufficient to demonstrate alter ego liability is appropriate – and there are none.

5  Instead, the SEC argues that imputing Calgon's *corporate conduct* to Weaver is a

6  "reasonable inference."  (*See, e.g.*, Opp. at 14).  The SEC's "inferential" application

7  of the alter ego doctrine is impermissible.  Indeed, the law requires the opposite

8  inference:  "there is a general presumption in favor of respecting the corporate

9  entity."  *NuCal Foods, Inc.*, 887 F. Supp. 2d at 993 (internal quotation marks,

10  modifications, and citation omitted).

11        Nor are the SEC's conclusory allegations that Weaver "owned and/or

12  controlled" Calgon and other "offshore shells," (*see, e.g.*, Opp. at 7), sufficient to

13  impute Calgon's conduct to Mr. Weaver.  *See NuCal Foods, Inc.*, 887 F. Supp. 2d at

14  993.  Despite the Opposition's rhetoric, the SEC's Complaint never alleges that

15  Calgon, Donnolis, or Petersham are "shells."  (*See generally* Compl.)  And, even if

16  it did, such a conclusory allegation would be insufficient.  *See Gerritsen v. Warner*

17  *Bros. Entm't*, 112 F. Supp. 3d 1011, 1044 (C.D. Cal. 2015) ("*Gerritsen I*") (finding

18  alter ego not adequately pled where plaintiff alleged no facts showing companies

19  were "shell corporations").  As to the SEC's allegations of "control," the SEC must

20  allege *facts* showing Weaver controlled Calgon "to such a degree as to render the

21  latter the mere instrumentality of the former."  *See NuCal Foods, Inc.*, 887 F. Supp.

22  2d at 998 ("the mere circumstance that all of the capital stock of a corporation is

23  owned or controlled by one or more persons, does not, and should not, destroy its

24  separate existence; were it otherwise, few private corporations could preserve their

25  distinct identity") (citation omitted); *Skydive Arizona, Inc.*, 2006 WL 2460595, at

26  *3, *7 (granting motion to dismiss for lack of personal jurisdiction and failure to

27

28

1   state a claim because conclusory allegations of ownership and "alter-ego status"

2   insufficient).  The SEC admits it does not have these facts, (Opp. at 13),[11] and has

3   not alleged them, (Opp. at 5).

4           Rather than allege facts that establish alter ego liability, the SEC perversely

5   argues that its own allegations fail to refute the application of the alter ego doctrine:

6           Read fairly, the Complaint alleges that Calgon was no
            more than a corporate proxy.  The Complaint alleges no
7           shareholders or owners other than Weaver and alleges that
            it retained only one officer (Defendant Berlinger).  It
8           alleges no actual business operations other than trading
            penny stock for its owner.  Bereft of partners, business
9           operations, co-owners, or layers of supervision between
            ownership and the company's sole officer, Weaver cannot
10          claim (at this stage) that the inference of control is
            unreasonable.

11  (*Id.* at 4-5 (without citation to the Complaint)).  Yet, the Complaint must

12  *affirmatively allege* facts demonstrating that Calgon is a mere instrumentality.  The

13  Court cannot infer alter ego based on the Complaint's silence as to Calgon's

14  business operations, employees, shareholders, or "layers of supervision."  *See NuCal*

15  *Foods, Inc.*, 887 F. Supp. 2d at 993 (the "inquiry turns on whether plaintiff has

16  provided *sufficient factual allegations* to establish both elements of the *prima facie*

17  case for alter-ego liability" and noting courts consider such factors as dominance

18  over management, inadequacy of capitalization or insolvency, failure to observe

19  corporate formalities, and commingling of corporate and noncorporate assets)

20  (emphasis added).  The SEC's linguistic gymnastics – claiming the Complaint does

21  not allege "the existence of shareholders or owners other than Weaver," "actual

22  business operations other than trading penny stock for its owner," "partners,

23  business operations, co-owners, or layers of supervision between ownership and the

24

25  _____

26  [11] "In fact, where, as here, pertinent facts bearing on the question of jurisdiction are
    in dispute – *e.g.*, the extent of Weaver's control of the entities he owned – discovery
27  should be allowed."  (Opp. at 13).

28

1  company's sole officer," is not the same as the Complaint affirmatively alleging

2  these things do not exist.  That is what the SEC must allege to disregard the

3  corporate form.[12]

4      In a footnote, the SEC skirts the central failing of its Complaint, stating:

> To the extent that Weaver is arguing that his use of a corporate shell somehow immunizes him from liability for a <u>direct</u> sale, he has cited no case to support that proposition.  That is not surprising; such an argument would champion form over substance, effectively allowing individuals to 'launder' their transactions through a corporate shell.  Nothing in the Securities Act, Exchange Act, or case law would require this Court to indulge such gamesmanship.

10  (Opp. at 16).  The argument misses two fundamental points:  (1) Weaver is not

11  alleged to be the individual who undertook the corporate actions at issue;[13] and (2)

12  bedrock principles of corporate law require the corporate *form* to be respected

13  absent sufficient allegations to disregard it.

14      D.    <u>The SEC is Not Entitled To Further Discovery</u>

15      "Foreign nationals usually should not be subjected to extensive discovery in

16  order to determine whether personal jurisdiction over them exists."  *Central States*,

17  230 F.3d at 946.  To qualify for jurisdictional discovery, the SEC "must make at

18  least a colorable showing that jurisdiction exists."  *See Houston v. Bank of Am.,*

19  *N.A.*, No. 14-02786, 2014 WL 2958216, at *5 (C.D. Cal. June 25, 2014) (internal

---

[12] The SEC cannot meet this burden with leave to amend.  It has already alleged that Defendant Berlinger exercised extensive control over Calgon.  (Compl. ¶¶ 52(b), 53).  Therefore, the SEC cannot now allege Weaver controlled Calgon "to such a degree as to render the latter the mere instrumentality of the former."

[13] Berlinger is alleged to have opened accounts in Calgon's name, exercised "sole dispositive power" and "directed activity in the accounts," "signed resolutions, exchanged correspondence, and handled other aspects in connection with the transfer of shares involving [Calgon]," and "directed the proceeds from the subsequent sale of Jammin' Java stock by [Calgon]."  (*Id.* ¶¶ 52(b), 53 (emphasis added)).

1   quotation marks and citation omitted).  Corporate ownership allegations alone,

2   "without any showing that the defendants exercised an unusually high degree of

3   control over [the subject corporation] or that corporate formalities were not

4   substantially observed," are not "a colorable basis for jurisdiction."  *Central States*,

5   230 F.3d at 947 (affirming denial of request for jurisdictional discovery).

6        The SEC argues that Weaver's request that the case be dismissed for lack of

7   jurisdiction "before the SEC can obtain discovery into how his offshore entities

8   operated" is "an audacious position."  (Opp. at 13).  Yet, the SEC ignores that it has

9   been investigating this matter for five years.  The "non-privileged portions of its

10  investigative file" produced so far amount to over 13 GB of data.  (Leiman Decl.

11  (Doc. No. 105-6) at ¶ 5).  In addition to its investigation, the SEC has sought

12  "discovery by informal means," (*id.* ¶ 6), and "obtain[ed] documents from foreign

13  securities regulators pursuant to various treaties and international memoranda of

14  understanding," (*id.* ¶ 7).  The SEC has also served formal discovery on several

15  Defendants, (*id.* ¶ 6(a)-(f)), and entered into "a formal cooperation agreement" with

16  Defendant Wheatley, (Mot. for Entry of Final Judgment (Doc. No. 101) at ¶ 8).

17  Despite the SEC's investigation and already-conducted discovery, it has uncovered

18  no basis for this Court to exercise jurisdiction over Weaver, failed to attribute any

19  conduct to Weaver in support of its claims, and failed to determine and allege "the

20  extent of Weaver's control of the entities he owned."  (Opp. at 13).  Given the

21  SEC's failure to establish a *prima facie* case of personal jurisdiction, further

22  discovery is inappropriate.  *See Central States*, 230 F.3d at 947.  In addition, leave

23  to amend should be denied.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d

24  981, 1007 (9th Cir. 2009) (affirming dismissal of SAC with prejudice when "it was

25  clear that the plaintiffs had made their best case and had been found wanting");

26  *Morongo Band of Mission Indians v. Rose*, 893 F.3d 1074, 1079 (9th Cir. 1990)

27  (affirming denial of leave to amend complaint on basis of factors including

28  "prejudice to defendants" and "the potential futility of the claims").

III.    <u>CONCLUSION</u>

Because the SEC does not allege any conduct by Weaver sufficient to establish jurisdiction over him or its claims against him and the Complaint provides no factual or legal basis to impute Calgon's conduct to Weaver, dismissal is warranted.  *See NuCal Foods, Inc.*, 887 F. Supp. 2d at 996 (granting motion to dismiss for lack of personal jurisdiction where plaintiff failed to show jurisdiction-challenging defendants purposefully availed themselves of the forum or that the forum-related activities of the other defendant should be attributed to them based on the alter-ego doctrine); *Hokama*, 566 F. Supp. at 645-47 (dismissing securities fraud claims for failure to plead fraud with particularity and specify defendants' individual roles in the scheme and holding conclusory allegations of alter ego liability insufficient).

In addition to failing to allege any conduct by Weaver, after five years of investigation the SEC fails to allege with particularity a pump and dump scheme. Instead, the SEC (1) asserts "coordinated trading" – without identifying traditional indicia of manipulative trading, (2) claims the Hunters made "false representations" regarding Jammin' Java stock – without identifying the specific content and time of the representation or any connection between the Hunters and Weaver, and (3) claims an agreement to provide financing was a "sham" – while acknowledging the agreement was fully funded.

As set forth above and in Weaver's Motion, the SEC's deficient Complaint fails to state a *prima facie* case of personal jurisdiction over him and any claim against him.  Therefore, Weaver respectfully requests the Court dismiss the Complaint in its entirety and with prejudice.

1   DATED: July 1, 2016           Respectfully submitted,

2

3                                 SCHEPER KIM & HARRIS LLP
                                  MARC S. HARRIS

4                                 MARGARET E. DAYTON

5                                 By: s/Marc S. Harris

6                                     Marc S. Harris
                                   Attorneys for Defendant Wayne Weaver

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 2:15-cv-08921 SVW (MRWx)

REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT