UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| N/A | | N/A |

**Proceedings:** IN CHAMBERS ORDER DENYING SUN'S AND AL-BARWANI'S MOTIONS TO DISMISS [142, 143].

### I.   Introduction

On November 17, 2015, the Securities and Exchange Commission ("SEC") filed the present lawsuit against Jammin' Java Corp ("Jammin' Java"), Shane G. Whittle ("Whittle"), Wayne S. Weaver ("Weaver"), Michael K. Sun ("Sun"), Rene Berlinger ("Berlinger"), Stephen B. Wheatley ("Wheatley"), Kevin P. Miller ("Miller"), Mohammed A. Al-Barwani ("Al-Barwani"), Alexander J. Hunter ("A. Hunter") and Thomas E. Hunter ("T. Hunter"). Dkt. 1. Defendants are alleged to have participated in an international "pump-and-dump" scheme involving the securities of Jammin' Java that generated at least $78 million in illicit profits. Compl., ¶ 5.

The original Complaint alleged (1) the Unregistered Offer and Sale of Securities in Violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), against Jammin' Java, Whittle, Weaver, Sun, Berlinger, Wheatley, Miller, and Al-Barwani; (2) Failure to File Beneficial Ownership Reports in Violation of Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d), and Rules 13d-1 and 13d-2 Thereunder, 17 C.F.R. §§ 240.13d-1, 13d-2, against Whittle, Weaver, Sun, and Berlinger; (3) Failure to File Beneficial Ownership Reports in Violation of Section 16(a) of the Exchange Act, 15 U.S.C. § 78p, and Rule 16a-3 Thereunder, 17 C.F.R. § 240.16a-3, against Whittle; (4) Fraud in Connection with the Purchase or Sale of Securities in Violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and 10b-5(c) Thereunder, 17 C.F.R. §§ 240.10b-5(a), (c), against Whittle, Weaver, Sun, and Berlinger; (5) Fraud in Connection with the Purchase or Sale of Securities in

|  | : |
|---|---|
| Initials of Preparer | |
|  | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

Violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b) Thereunder, 17 C.F.R. § 240.10b-5, against Whittle A. Hunter, and T. Hutger; and (6) Touting Securities for Compensation Without Disclosure in Violation of Section 17(b) of the Securities Act, 15 U.S.C. § 77q(b), against A. Hunter and T. Hunter.

On May 31, 2016, Jammin' Java and the SEC moved for Judgment by Consent. Dkts. 90, 91. On June 17, 2016, Wheatley and the SEC moved for Judgment by Consent. Dkts. 101, 102. The Court approved both motions on July 6, 2016. Dkts. 109, 110.

Then, four Defendants moved to dismiss the Complaint against them: Sun, Miller, Al-Barwani, and Weaver, who each allegedly owned and/or controlled entities involved in the coordinated distribution, trading, and dumping of Jammin' Java stock.   The Defendants contended that although the allegations in the Complaint may have alleged that the entities they owned participated in the scheme, it did not sufficiently allege individual control over the actions of the entities they are alleged to own.   The Court agreed that the Complaint was deficient with respect to Defendants Sun, Miller, and Al-Barwani, finding that the Complaint did not plausibly allege their individual conduct in connection with the overall scheme.   As a result, the Court granted the motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and failure to state a claim under Rule 12(b)(6), although the Court denied Defendant Weaver's motion to dismiss.   Order Granting Sun's, Miller's and Al-Barwani's Motions to Dismiss; Denying Weaver's Motion to Dismiss, Dkt. 118 ("July 18 Order").

The SEC subsequently filed a First Amended Complaint on August 8, 2016, purportedly remedying the deficiencies noted in the order granting the motions to dismiss.   First Amended Complaint ("FAC"), Dkt. 121. Two of the defendants whose motions to dismiss were originally granted, Defendants Sun and Al-Barwani ("Moving Defendants"), filed subsequent motions to dismiss the FAC. Dkts. 142, 143.

The two motions to dismiss the FAC are presently before the Court.   Defendants Sun and Al-Barwani argue that the FAC has not addressed the deficiencies that the Court noted in dismissing the original Complaint, specifically arguing that the FAC fails to plausibly allege that Sun and Al-Barwani participated in the pump-and-dump scheme on an individual level.   Without individual participation or a showing that the corporate entities were mere alter egos of their owners, the Court would not have personal jurisdiction over the foreign defendants and the FAC would fail to state a claim upon which relief could be granted, meaning the cases involving Sun and Al-Barwani would have to be dismissed.

|  | : |  |
|---|---|---|
| Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

For the following reasons, the Court finds that the FAC provides sufficient factual allegations that give rise to the plausible inference that Sun and Al-Barwani individually participated in the overall scheme. This plausible showing of individual participation grants the Court personal jurisdiction over the defendants and satisfies the requirements of Rule 9(b) and Rule 12(b)(6).   As a result, the Court DENIES the Defendants' Motions to Dismiss.

**II.    Legal Standards**

*A.  Legal Standard Governing Motions to Dismiss Under Rule 12(b)(2)*

When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Bohara v. Backus Hosp. Medical Benefit Plan*, 390 F.Supp.2d 951, 961 (C.D. Cal. 2005) (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)). Absent formal discovery or an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction exists to survive a Rule 12(b)(2) motion to dismiss. *Pebble Beach*, 453 F.3d at 1154; *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002); *Ziegler*, 64 F.3d at 473.

To make this showing, the plaintiff can rely on the allegations in its pleadings to the extent they are not controverted by the moving party. *See*, *e.g.*, *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001) ("Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss"). If defendants adduce evidence controverting the allegations, however, the plaintiff cannot rely on his pleadings, but must "'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977)). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see also Am. Tel.& Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists,'" quoting *WNS Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

    B. *Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)*

    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the Complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacific Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). The Court must accept all factual allegations pleaded in the Complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

    The Court need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausible suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

    III.    Analysis

    The parties are familiar with the alleged factual background involved in this case, as fully described in the order considering the original motion to dismiss.  July 18 Order, Dkt. 118, 4-10. While the FAC includes more specific details with regards to the Moving Defendants' participation in the alleged scheme, the general factual framework remains unchanged.  The FAC's additional factual allegations are included in the Court's analysis of the legal sufficiency of the FAC under Rules 12(b)(2) and 12(b)(6).

                                                                                            :

Initials of Preparer    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

A. *Whether The Court Has Personal Jurisdiction Over Moving Defendants*

Moving Defendants first contend that the claims against them must be dismissed because the Court does not have personal jurisdiction over them. Neither Moving Defendant is a United States resident. Sun is an Indian citizen residing in Jersey and Al-Barwani is a 72-year old citizen of Oman. *Id.*, ¶ 17, 20.

The SEC contends that personal jurisdiction over the Moving Defendants exists because they owned and controlled entities that conducted coordinated trading as part of a "pump-and-dump" scheme related to the stock of a U.S. company quoted exclusively on the Over-the-Counter Bulletin Board ("OTCBB") in the United States, and then dumped shares of that stock on the U.S. market. *See id.*, ¶¶ 32-34, 37, 73, 76, 79, 97, 112, 114, 145. The SEC contends that by doing so, the Moving Defendants availed themselves of the benefits of conducting activities within the United States and purposefully directed their respective actions at the United States, with knowledge that their actions would harm shareholders there.

Moving Defendants do not object to the allegation that the Court has personal jurisdiction over the entities themselves, under either the purposeful availment or purposeful direction doctrines. Rather, they contend that the Court does not have personal jurisdiction over them as individuals, as the Complaint does not sufficiently allege that they participated in, controlled, or otherwise should be held responsible for the actions of the entities they are respectively alleged to have owned. Moving Defendants argue that personal jurisdiction over individual defendants cannot be premised solely on their alleged ownership of entities subject to the Court's jurisdiction; rather, the individual Moving Defendants must be alleged to have participated in or had the requisite degree of control over the activities giving rise to liability.

Because Moving Defendants do not present any evidence controverting the allegations in the Complaint, and because it appears the parties have not yet begun formal discovery, the Court will decide whether it has jurisdiction over Moving Defendants based on the allegations in the pleadings. *See Pebble Beach*, 453 F.3d at 1154; *Rio Properties, Inc.*, 284 F.3d at 1019; *Ziegler,* 64 F.3d at 473.

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

*1. Legal Standard Governing Personal Jurisdiction in Securities Fraud Cases*

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach*, 453 F.3d at 1154-55 (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coop.*, 103 F.3d 888, 893 (9th Cir. 1996)); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1082 (C.D. Cal. 2003) (citing *Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974)).

The Securities Act and the Exchange Act permit "the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment." *S.E.C. v. Sharef*, 924 F. Supp. 2d 539, 544 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1013 (D.N.J. 1996) ("Under Section 27 of the Securities and Exchange Act of 1934, United States courts may exercise personal jurisdiction over non-residents to the full extent permitted by the due process clause," citing *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1339 (2d Cir. 1972); *Perez–Rubio v. Wyckoff*, 718 F. Supp. 217, 227 (S.D.N.Y. 1989)). "For claims under the Securities Exchange Act, personal jurisdiction lies in any district court '[s]o long as a defendant has minimum contacts with the United States.'" *S.E.C. v. Ficeto*, No. CV 11-1637-GHK RZX, 2013 WL 1196356, at *4 (C.D. Cal. Feb. 7, 2013) (quoting *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)).

To satisfy due process, a defendant must have sufficient "minimum contacts" with the forum that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are two recognized bases for exercising personal jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over it in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050-51 (9th Cir. 1997). The SEC contends that the Court has specific jurisdiction over the Moving Defendants.

The Ninth Circuit applies a three-prong test to determine whether a court can exercise specific jurisdiction over a defendant:

|  | : |  |
|---|---|---|
|  | Initials of Preparer | |
|  | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

"'(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.'"

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The plaintiff bears the burden of satisfying the first two prongs of this test. *Id.* If it does, "the burden then shifts to the defendant[s] to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). "Because this is a securities fraud case, minimum contacts may be established either by purposeful direction or purposeful availment." *Ficeto*, 2013 WL 1196356, at *4 (citing *In re LDK Solar Securities Litigation*, No. C 07-05182, 2008 WL 4369987, *6 (N.D. Cal. 2008) (concluding in a securities case that the "conduct plaintiffs identify contains elements both of purposeful availment and purposeful direction") and *Lyddon v. Rocha–Albertsen*, No. 1:03-CV-05502 OWW TAG, 2006 WL 3086951, *26 (E.D. Cal. 2006) (explaining that "[a] purposeful direction analysis is most often used in suits sounding in tort, such as fraud")).

"Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988). To demonstrate purposeful availment, the SEC must show that the defendants "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing *Shute*, 897 F.2d at 381); *see also Burger King*, 471 U.S. at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person. . ."). Defendants' contacts must be such that he should "reasonably [have] anticipate[d] being haled into court [ ]here." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "[C]ourts have found that the transactional aspects of securities fraud establish purposeful availment. *In re LDK Solar Securities Litigation* held, for example, that the defendants 'purposefully availed themselves of the forum by taking advantage of this nation's laws and its capital markets.'" *Ficeto*, 2013 WL 1196356, at *5 (quoting *LDK Solar Securities Litigation*, 2008 WL 4369987 at *6). *See also Kairalla v. Advanced Med. Optics, Inc.*, No. CV 07-05569 SJO (PLAx), 2008 WL 2879087, at *15 (C.D. Cal. June 6, 2008) (holding that personal jurisdiction lies over German defendant in securities fraud case where plaintiff alleged that the defendant "trades in the United States securities markets, purposefully availing himself of the protections and privileges of the United States, and that [defendant] has conducted business with . . . executive offices in Santa Ana, California"); *see also Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1068 (9th Cir. 2000) (reversing district court that dismissed securities claims for lack of personal jurisdiction because "[a] defendant who is alleged to have knowingly traded on an American exchange on the basis of inside information has purposefully availed himself of the instrumentalities of United States commerce and can reasonably expect to be haled into an American court").

Purposeful direction, by contrast, enables courts to exercise jurisdiction over defendants who have engaged in an act that is purposefully directed at, and has an effect in, the forum state, even if the act itself takes place outside state boundaries. *See Schwarzenegger*, 374 F.3d at 802-03. The Ninth Circuit applies a "three-part 'effects' test derived from *Calder*[, . . .] 465 U.S. 783. . . . Under this test, a defendant purposefully directed his activities at the forum if he: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Picot v. Weston*, 780 F.3d 1206, 1213-14 (9th Cir. 2015) (citations omitted). As both the Supreme Court and Ninth Circuit have recently clarified, "applying this test, [courts] must 'look[ ] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.'" *Id.* at 1214 (quoting *Walden v. Fiore*, __ U.S. ___, 134 S. Ct. 1115, 1122 (2014)).

      2.   *Claims Against Foreign Defendants Trading on a U.S. Market*

Courts routinely find personal jurisdiction over foreign defendants where the fraud claims against them are tied to the trading of securities on a U.S. market. *See, e.g.*, *Ficeto*, 2013 WL 1196356, at *2-*3 (finding personal jurisdiction over foreign defendant accused of manipulating the stock price of a U.S. company trading in the United States); *SEC v. Queri*, No. 08cv1367, 2009 WL 186017, *5-*6

                                                                                                                                          :

Initials of Preparer        PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

(W.D. Pa. Jan. 26, 2009) (finding personal jurisdiction over foreign defendant accused of insider trading because "[i]t cannot be seriously maintained that defendants . . . did not avail themselves of the privileges of American law when they allegedly traded . . . in the securities of a United States corporation listed on a United States stock exchange").

However, ownership of or employment by an entity subject to the Court's jurisdiction is not alone sufficient for the Court to exercise jurisdiction over the owner or employee. Rather, "[e]ach defendant's contacts with the forum State must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary"); *see also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998) (defendant does not purposefully avail itself merely by owning all or some of a corporation subject to jurisdiction) (citing *Keeton*, 465 U.S. at 781 n.13 and *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977)). Individuals may nonetheless be subject to the Court's jurisdiction on the basis of their own personal participation in the actions giving rise to jurisdiction or if the entity is an alter ego of the individual.

### a. Direct Participation

Owners or "employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation." *Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir.1996) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)); *see also Howard*, 228 F.3d at 1069 (rejecting argument that ownership is sufficient to establish personal jurisdiction in insider trading case, stating that "only stockholders who traded on the basis of material, non-public information would have the necessary contacts for personal jurisdiction").

The conclusory allegation that the owner or officer's actions are coexistent with that of the owned or employing entity is insufficient. *See Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011), *aff'd sub nom. Alki Partners, L.P. v. Windhorst*, 472 Fed. App'x 7 (2d Cir. 2012) ("A person's status as a board member is not alone sufficient to establish jurisdiction . . . . [C]onclusory allegations of participation in the fraud are insufficient," quoting *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d at 467, citing *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 400 (S.D.N.Y.

: 

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

2005); and *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 355 (D. Md. 2004)). While the size of the entity or the complexity of its operations may affect whether control or individual participation can be inferred from the alleged facts, the Complaint must ultimately allege that the individual, himself, participated in the activities giving rise to jurisdiction.

### 3. Whether the Court Has Personal Jurisdiction Over Sun and Al-Barwani

The Court now finds that, unlike in the original Complaint, the allegations in the FAC are sufficient to establish personal jurisdiction over Sun and Al-Barwani, as the FAC sufficiently alleges that the Moving Defendants acted individually in participating in the pump-and-dump scheme.[1] The FAC is much more specific regarding how the Moving Defendants approved and authorized the stock transactions in question, and as a result present at least a plausible inference that Sun and Al-Barwani committed personal conduct that violated the securities laws. Thus, the FAC alleges direct participation by the Moving Defendants, which is sufficient to grant the Court personal jurisdiction over them.

Importantly, in evaluating the original motion to dismiss, the Court found that the SEC's opposition cited facts that were not actually alleged in the Complaint and therefore could not be relied upon in the Court's analysis. July 18 Order, Dkt. 118, 19. The FAC, on the other hand, has properly alleged the necessary facts, which can now be included in the personal jurisdiction analysis.

First, the Court found that the Complaint did not allege that the defendants were the sole owners of their respective entities. *Id.* The FAC clearly does allege such sole ownership. The FAC alleges that Sun was the sole beneficial owner of Cilitz, Westpark, and Torino.[2] FAC, ¶¶ 32, 33, 73(g). It also alleges that Al-Barwani was the sole beneficial owner of Renavial. FAC, ¶ 37.

Second, the Court found that the Complaint did not properly allege that the entities retained only one officer. July 18 Order, Dkt. 118, 19. While not every entity retained only one officer, the FAC

---

[1] The Court finds that the Moving Defendants participated directly in the scheme, and therefore find personal jurisdiction under the direct participation prong of the personal jurisdiction test. Therefore, this Court need not reach the question of whether the entities were the alter egos of the Moving Defendants.

[2] The FAC alleges that Sun was the sole beneficial owner of Torino through another trust entity. FAC, ¶ 73(g). The Defendant argues that this trust buffer makes the allegation insufficient. However, the Court does not agree that ownership through a trust entity discounts the importance that Sun was the sole beneficial owner of the entity in question.

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

does specifically allege which entities had only one officer and which had more than one. For instance, in reference to Sun's entities, the FAC alleged that Cilitz retained three nominee officers, but all three were also involved in the formation of entities owned and controlled by co-defendants. FAC, ¶ 32. Additionally, Westpark had only one officer and director, who is now a co-defendant and was intimately connected to the overall scheme. FAC, ¶ 33. Finally, Torino had two officers, who also opened and managed accounts for an entity owned by a co-defendant. FAC, ¶ 34. With regards to Al-Barwani, a co-defendant was retained as the sole officer and director of his company, Renavial. FAC, ¶ 37.

Third, the Court found that the Complaint did not allege that the Moving Defendants' entities had no operations other than trading U.S. penny stocks. July 18 Order, Dkt. 118, 19. The FAC does make such allegations. With regards to Sun, the FAC alleges that from the time of their formation through at least May 2011, all three of the entities owned by Sun were shell entities that did not have any operations beyond trading stock and transferring funds and had no employees. FAC, ¶¶ 32, 33, 34. Additionally, with regards to Al-Barwani, the FAC alleges that his company Renavial also was a shell entity without any operations beyond trading stock and transferring funds and had no employees. FAC, ¶ 37.

Finally, the Court found that the Complaint did not allege that the entities did not hold any other stocks besides Jammin' Java's.[3] Again, the FAC does make such allegations. With regards to Sun, the FAC alleges that for two of his entities, all or nearly all of the activity in the relevant accounts consisted of the acquisition and sale of Jammin' Java stock or the movement of related sale proceeds. FAC, ¶¶ 33, 34. The activity that was not related to Jammin' Java was related to small sales of another stock, which was also traded by co-defendants' entities. *Id*. With regard to Al-Barwani, the only activity in his entity's relevant account consisted of the acquisition and sale of Jammin' Java stock or the movement of related sale proceeds. FAC, ¶ 37.

As the FAC properly alleges the facts that were found lacking in the Complaint, the Court may now consider such facts in its personal jurisdiction analysis. Additionally, the factual allegations in the

---

[3] The Court also found that the Complaint had not alleged that the entities sold all of their stock. While the FAC does not simply allege that the entities sold all of their stock, it does allege with specificity the transactions made by the entities in question and the Moving Defendants' authorizing of those transactions, as well as how the timing of those transactions fit in with the overall pump-and-dump scheme. FAC, ¶ 97(e), (f), (g). Therefore, the Court finds that this deficiency in the Complaint has been rectified by the FAC.

:

Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

FAC are much more specific regarding the actions taken by the Moving Defendants. For instance, the FAC alleges that in response to regulatory requests concerning their entities, Berlinger, a co-defendant who also served as an officer for the entities in question, communicated or met with each respective owner, including Sun and Al-Barwani, to coordinate the response to those requests. FAC, ¶ 78. The FAC also details how Torino, Westpark, and Renavial acquired shares of Jammin' Java shares of stock, including the date and number of shares involved in the acquisitions. FAC, ¶¶ 97(e)-(g). The FAC alleges that the Moving Defendants' approved of or authorized these transactions,[4] and that they were coordinated with the transactions of other co-defendants as part of the overall scheme. FAC, ¶ 100, 101, 114(d). Lastly, the FAC alleges that in October 2010, Sun and a co-defendant travelled to Switzerland to meet with Al-Barwani about Jammin' Java and its stock. FAC, ¶ 73(c).

Combined with the facts properly alleged in the original Complaint,[5] the FAC has clearly established a prima facie case of personal jurisdiction over the Moving Defendants. The combination of the Moving Defendants' control and sole ownership of the entities and their individual actions with regards to the specific transactions involving Jammin' Java stock indicate a plausible inference that they committed personal conduct involving securities traded within the United States, not just that their entities committed such conduct. The specific allegations of the FAC go well beyond the generic allegations of the original Complaint that personal jurisdiction was appropriate merely because the Moving Defendants had an ownership stake in the entities. Thus, the FAC alleges sufficient facts that will allow the Court to exercise personal jurisdiction over Sun and Al-Barwani as individuals because they have plausibly alleged minimum contacts with the forum by their personal actions.

---

[4] The Moving Defendants argue that allegations that they "approved of" or "authorized" these transactions are conclusory allegations that should not be assumed true under *Iqbal*. Dkt. 142, 13. However, given that the FAC also alleges that the Moving Defendants were the sole beneficial owners of the entities in question, it is entirely plausible that the Moving Defendants approved of the transactions before they occurred. Additionally, allegations that individuals approved of or authorized specific transactions are much more plausible than generic allegations that individuals authorized entire schemes or a pattern of behavior. Therefore, these allegations contribute to the Court's finding that the individual conduct of the Moving Defendants is sufficient to grant the Court personal jurisdiction over them. The Moving Defendants may disagree that the evidence will establish their authorization of these transactions, but the allegations in the FAC are plainly sufficient in stating a plausible claim that the Defendants directly and individually participated in the scheme, and thus the Motion to Dismiss must be denied.

[5] The Court found that the original Complaint properly alleged that the jurisdictions in which the entities were established were selected for their reputation for secrecy, that the entities received Jammin' Java stock in increments sized to avoid SEC reporting requirements, and the timing of the creation, operation, and transfer of stock to and from the entities was orchestrated with other defendants. July 18 Order, Dkt. 118, 20. The FAC also sufficiently allege these facts.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

### 4. *Traditional Notions of Fair Play and Substantial Justice*

"Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (internal quotation marks omitted) (citing *Burger King*, 471 U.S. at 477). Courts consider seven factors, none of which is dispositive:

> "(1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Id.*

Similar to the arguments made by Weaver in the original motion to dismiss, the Moving Defendants only raise the first and second factors: 1) the extent of the Defendants' interjection in the forum; and 2) the burden litigating in this forum presents to them as international parties. They argue that "when a defendant is not located in the United States, '[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international context.'" *Sharef*, 924 F. Supp. 2d at 548 (quoting *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty.,* 480 U.S. 102, 115 (1987)).

As was the case with Weaver, the Court concludes that the Moving Defendants' "inconvenience is insufficient to 'overcome the strong presumption of reasonableness of the assertion of personal jurisdiction' because this factor will always favor the non-forum defendant." *Ficeto*, 2013 WL 1196356, at *7 (quoting *Dole Food*, 303 F.3d at 1117 and citing *Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction'")). "Courts routinely reject claims by foreign defendants that it would be too burdensome for them to defend themselves outside their home country, particularly when those companies 'use technology and transportation to carry on the business relationship at issue.'" *Chassin Holdings Corp. v. Formula VC Ltd.*, No. 15-CV-02294-MEJ, 2016 WL 1569986, at *7 (N.D. Cal. Apr. 19, 2016) (citing *Artec Grp., Inc. v. Klimov*, 2015 WL 9304063, at *6 (N.D. Cal. Dec.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

22, 2015) (quoting *Pandigital, Inc. v. DistriPartners B.V.*, 2012 WL 6553998, at *4 (N.D. Cal. Dec. 14, 2012)). Additionally, for the reasons stated previously in this order, the Defendants' interjection in the forum is allegedly much more significant than how it is characterized by the Moving Defendants. Therefore, this factor does not weigh significantly in Defendants' favor.

Further, "[t]he interest of the United States in adjudicating the case is substantial because there is a need to protect American shareholders and insure the integrity of trading securities of American corporations. The SEC has a strong interest in obtaining convenient and effective relief because it is charged with the duty to enforce securities regulations. The interstate judicial system has a substantial interest in providing efficient relief for securities violations and establishing a clear uniformity regarding the enforcement of SEC regulations." *Alexander*, 2003 WL 21196852, at *4 (citing *SEC v. Gonzalez*, 2001 WL 940560, at *67 (in finding that defendants had not demonstrated that theirs was one of the rare cases in which inconvenience to the parties outweighs the reasonableness of jurisdiction, the court recognized the strong interest of the United States in enforcing its securities laws); *S.E.C. v. Softpoint, Inc.*, No. 95 Civ. 2951 GEL, 2001 WL 43611, at *6 (S.D.N.Y. Jan. 18, 2001) (same)).

In conclusion, the traditional notions of fair play and substantial justice do not counsel against exercising personal jurisdiction over Sun and Al-Barwani. As a result, the Moving Defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is DENIED.

   B.  *Whether the SEC Has Stated a Claim For Violations of Section 5*[6]

      1. *Legal Standard Regarding Section 5 of the Securities Act*

The FAC alleges that all Moving Defendants violated Section 5 of the Securities Act. The Moving Defendants argue that the FAC fails to state a claim against them for violations of Section 5. Section 5 prohibits any person from offering or selling a security in interstate commerce unless it is registered. 15 U.S.C. § 77e. "To establish a prima facie case for violation of Section 5, the SEC must show that (1) no registration statement was in effect as to the securities; (2) the defendant directly or indirectly sold or offered to sell securities; and (3) the sale or offer was made through interstate

---

[6] As the Moving Defendants, especially Sun, are accused of the same securities violations in the FAC as in the original Complaint, the legal analysis conducted in this order regarding the sufficiency of the SEC's pleadings is substantially the same as the one conducted in the July 18 Order.

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

commerce." *S.E.C. v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1255 (9th Cir. 2013).

"[L]iability under § 5 is not confined only to the person who passes title to the security. Instead, courts have established the concept of 'participant' liability to bring within the confines of § 5 persons other than sellers who are responsible for the distribution of unregistered securities." *S.E.C. v. Murphy*, 626 F.2d 633, 649 (9th Cir. 1980). The Ninth Circuit has "'recognize[d] that [a participant's] role in the transaction must be a significant one before [Section 5] liability will attach,' and has defined a 'significant' role to include one who is both a 'necessary participant' and 'substantial factor' in the sales transaction." *S.E.C. v. Phan*, 500 F.3d 895, 906 (9th Cir. 2007) (quoting *Murphy*, 626 F.2d at 648, 652).

The "necessary participant" prong is akin to "but for" causation, and asks whether "but for the defendant's participation, the sale transaction would not have taken place." *Murphy*, 626 F.2d at 651. The "substantial factor" prong is akin to a proximate causation, and "[b]efore a person's acts can be considered the proximate cause of a sale, his acts must also be a substantial factor in bringing about the transaction." *Id.*; *see also Sec. & Exch. Comm'n v. Blackburn*, No. CV 15-2451, 2015 WL 10911439, at *3 (E.D. La. Sept. 11, 2015) ("The 'necessary participant' and 'substantial factor' test involves a two-part inquiry. A defendant is a necessary participant if 'but for' his participation in the distribution of unregistered securities, the sale transaction would not have taken place. Further, a defendant is a substantial factor in the distribution of unregistered securities if his overall conduct and participation is not 'de minimis,'" citing *Murphy*, 626 F.2d at 651; *CMKM Diamonds*, 729 F.3d at 1257); *SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 422, 430, 434-35 (S.D.N.Y. 2007) (holding that an "indirect participant, who has not himself passed title to an unregistered security, may nevertheless be liable for its offer or sale" using the "necessary participant test"). "The proximate cause analysis required by *Murphy* . . . usually involves a question of fact for the jury." *CMKM Diamonds,* 729 F.3d at 1255-56 (citing *Anderson v. Aurotek*, 774 F.2d 927, 930 (9th Cir. 1985) (per curiam), *overruled in part on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988)).

Moving Defendants do not deny that no registration statement was filed in connection with the transfer of Jammin' Java shares or that such transfers made use of the means of interstate commerce. *See* Compl., ¶¶ 98, 113. Rather, Moving Defendants contend that the Complaint fails to plausibly allege that they, as individuals, directly or indirectly sold or offered to sell securities.

:

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

*2. Whether Moving Defendants Directly or Indirectly Sold or Offered to Sell Securities*

As discussed above, and as the Court found with regards to Weaver in the July 18 Order, the FAC does allege sufficient facts to state plausible claims that Sun exerted control over Cilitz, Westpark, and Torino, and that Al-Barwani exerted control over Renavial, which participated in the transfer of stock, and that the Moving Defendants also participated directly in the scheme. The allegations against Sun and Al-Barwani are supported by factual allegations that they approved of specific transactions involving Jammin' Java stock, and properly alleged that the timing of transfers to and from entities over which they exerted control coincided with each other and also with similarly-timed transfers to offshore entities owned by his co-Defendants.   FAC., ¶¶ 78, 97(e), 97(f), 97(g).   Again, as discussed by the Court in its analysis of personal jurisdiction, the factual allegations of the FAC go far beyond the allegations of the original Complaint and provide a clearly plausible claim that the Moving Defendants exerted control over the entities they owned.   As the Moving Defendants do not dispute that the FAC clearly alleges that the entities in question participated in the transfer of Jammin' Java stock, the Court concludes that the FAC sufficiently alleges that both Defendants violated Section 5.   Therefore, the Moving Defendants' motions to dismiss the Section 5 violations against them are DENIED.

*C. Whether the SEC Has Stated a Claim For Violations of Section 13(d)*

*1. Legal Standard Governing Section 13(d) of the Exchange Act*

The Complaint alleges that Sun violated Section 13(d) of the Exchange Act. Section 13(d) requires any person who has accumulated more than 5% of a company's stock to file a public disclosure with the SEC that details the owner's background, how they acquired the stock, and any "arrangements or understandings" regarding the "transfer of any of the securities." 15 U.S.C. § 78m(d)(1). Rule 13d-1, implementing Section 13(d)(1) of the Exchange Act, requires a stock purchaser acquiring beneficial ownership of 5% or more of a company's securities to disclose his ownership to the SEC. 17 C.F.R. § 240.13d-1(a). Rule 13d-2, implementing Section 13(d)(2) of the Exchange Act, requires that the stock holder amend their beneficial ownership report promptly whenever there is a "material change" in ownership. 17 C.F.R. § 240.13d-2(a). Section 13(d) is a strict liability statute. *See, e.g.*, *Levy*, 706 F. Supp. at 69; *SEC v. Savoy Indus.*, 587 F.2d 1149, 1167 (D.C. Cir. 1978).

An individual is deemed a "beneficial owner" of a security if they directly or indirectly have or share: "1) Voting power which includes the power to vote, or to direct the voting of, such security;

Initials of Preparer : PMC

Case 2:15-cv-08921-SVW-MRW   Document 150   Filed 10/28/16   Page 17 of 20   Page ID
#:1615

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

and/or, 2) Investment power which includes the power to dispose, or to direct the disposition of, such security." 17 C.F.R. § 240.13d-3. The individual beneficial ownership inquiry "focuses on any relationship that, as a factual matter, confers on a person a significant ability to affect how voting power or investment power will be exercised, because it is primarily designed to ensure timely disclosure of market-sensitive data about changes in the identity of those who are able, as a practicable matter, to influence the use of that power." *S.E.C. v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 607 (S.D.N.Y. 1993), *aff'd sub nom. S.E.C. v. Posner*, 16 F.3d 520 (2d Cir. 1994).

> 2. *Whether the FAC Plausibly Alleges Beneficial Ownership*

The FAC alleges that Sun violated Section 13(d) of the Exchange Act. Sun argues that the Complaint fails to sufficiently allege he beneficially owned the Jammin' Java shares owned by his entities. As discussed above, the FAC plausibly alleges that Sun had control over his entities' management, and therefore had a significant ability to affect how voting power or investment power would be exercised with respect to securities held by his entities. The FAC therefore plausibly alleges that Sun had beneficial ownership over Jammin' Java shares as an individual. It states, "Sun controlled, and was the sole beneficial owner of, Cilitz, Torino, and Westpark. With the exception of one day during the time period December 13, 2010 through March 8, 2011, the collective holdings of these entities exceeded 5%. Given these holdings, Sun was required to, but did not, file beneficial ownership reports with the commission disclosing this ownership position, or material changes in the ownership, and other required information." FAC, ¶ 112(c). Combined with the other allegations discussed above, the SEC has clearly and plausibly alleged that Sun was the beneficial owner of the Jammin' Java stock owned by his entities. As the total Jammin' Java stock owned by these entities surpassed 5%, the FAC has plausibly stated a claim that Sun violated Section 13(d). Therefore, Sun's motion to dismiss the Section 13(d) violation against him is DENIED.

> D. *Whether the SEC Has Stated a Claim For Violations of Section 10(b)*
>
> 1. *Legal Standard Governing Section 10(b) of the Exchange Act*

Rule 10b-5, promulgated by the Securities and Exchange Commission pursuant to section 10(b) of the 1934 Act, makes it unlawful for any person to use "manipulative or deceptive device[s]" in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). Specifically, one cannot (a) "employ any device, scheme, or artifice to defraud"; (b) "make any untrue statement of a material fact or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading"; or (c) "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

"Section 10(b) and Rule 10b-5 impose primary liability on any person who substantially participates in a manipulative or deceptive scheme by directly or indirectly employing a manipulative or deceptive device (such as the creation or financing of a sham entity) intended to mislead investors, even if a material misstatement by another person creates the nexus between the scheme and the securities market." *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 334 (S.D.N.Y. 2010) (citing *Filler v. Lernout*, 236 F. Supp. 2d 161, 173 (D. Mass. 2003) (discussing *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996) cert. denied, 522 U.S. 812 (1997) and *SEC v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir. 1998) (extending primary liability to a registered trader who "did not himself have a manipulative purpose" when he engaged in deceptive trading at the direction of his employer))).

"Regardless of whether a § 10(b) plaintiff alleges a misrepresentation, omission, or manipulation, he must plead and prove the following elements: (1) . . . use or employ[ment of] a[ ] manipulative or deceptive device or contrivance; (2) scienter, i.e.[,] [a] wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to . . . as transaction causation; (5) economic loss; and (6) loss causation, i.e.[,] a causal connection between the manipulative or deceptive device or contrivance and the loss." *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 939 (9th Cir. 2009) (internal quotation marks omitted); *see also Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1047 (9th Cir. 2006), *vacated on other grounds by Avis Budget Group, Inc. v. Cal. State Teachers' Ret. Sys.*, 552 U.S. 1162 (2008).

Rule 9(b) requires that the "circumstances constituting fraud or mistake . . . be stated with particularity." Fed. R. Civ. P. 9(b). "Generally, a plaintiff must plead 'with particularity' the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud." *See Cirulli v. Hyundai Motor Co.*, No. SACV 08-0854 AG (MLGx), 2009 WL 5788762, *4 (C.D. Cal. June 12, 2009) (citing *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-49 (9th Cir. 1994) (en banc); *Lancaster County Hospital v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Generally, a plaintiff must plead the 'time, place, and specific content' of allegedly fraudulent conduct to satisfy Rule 9(b)").

|  | : |  |
|---|---|---|
| | Initials of Preparer | |
| | | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

Under Rule 9(b) "there is no absolute requirement that where several defendants are sued in connection with an alleged fraudulent scheme, the complaint must identify false statements made by each and every defendant. 'Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.' On the other hand, Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.' In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Beltz Travel Service, Inc.*, 620 F.2d at 1367; *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998).

To state a claim under Section 10(b), the SEC must also allege scienter. "Scienter" refers to "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). "The knowledge or scienter element of a fraud claim need not be pleaded with particularity, but may be [ ] alleged generally pursuant to Rule 9(b). However, knowledge must still be pleaded sufficiently to make entitlement to relief plausible." *Owens v. Bank of America, N.A.*, No. 11–cv–4580–YGR, 2013 WL 1820769, *4 (N.D. Cal. Apr. 30, 2013); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007) ("While the factual circumstances of the fraud itself must be alleged with particularity, the state of mind – or scienter – of the defendants may be alleged more generally"); *In re GlenFed Inc. Securities Litigation*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter generally, just as the rule states – that is, simply by saying that scienter existed.").

While "knowledge and intent may be averred generally. . . the circumstances of fraud must be stated with particularity. A plaintiff must allege sufficient facts to support an inference or render plausible that the defendant acted with the requisite intent." *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 659 (S.D. Cal. 2014) (citing *United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154 (5th Cir. 2010) ("While Rule 9(b) provides that intent and knowledge 'may be alleged generally,' this is not license to base claims of fraud upon conclusory allegations."); I*n re DDAVP Direct Purchaser Antitrust Lit.*, 585 F.3d 677, 695 (2d Cir. 2009) ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:15-cv-08921-SVW-MRW | Date | October 28, 2016 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Jammin Java Corp. et al* | | |

*2. Whether the Complaint Has Pled Violations of Section 10(b) With Particularity*

The SEC alleges that Sun committed manipulative or deceptive acts in furtherance of the fraudulent pump-and-dump scheme. Sun argues that the SEC fails to state a claim under Section 10(b) because (1) the allegations concerning his individual conduct fail to establish that he engaged in acts that had the principal purpose and effect of furthering a scheme to defraud investors and instead impermissibly rely on guilt by association; and (2) the FAC fails to allege that he acted with scienter.

As discussed above, the FAC has added a great deal of specificity compared to the general allegations of the original Complaint. The Court now finds that the allegations described above satisfy Rule 9(b)'s requirements regarding added particularity. The FAC has sufficiently alleged that Sun controlled Cilitz, Westpark, and Torino and described the specific transactions involving those entities. The FAC sufficiently recounts the role of those entities in the overall scheme to defraud investors, and therefore has sufficiently alleged Sun's role in the overall scheme. Sun's entities acquired Jammin' Java stock at exceptionally cheap prices, retained the stock as the price was artificially inflated by other members of the conspiracy, and then sold the stock when the price was high. The profits achieved by the entities were then distributed among the members of the conspiracy. Further, given the coordination of the transactions, the FAC sufficiently alleges that Sun knew of the scheme and participated in it purposefully. In sum, the Complaint alleges with the requisite degree of particularity Sun's knowing participation in the fraudulent scheme. Sun's motion to dismiss the Section 10(b) claim against him is DENIED.

**IV. Order**

For the aforementioned reasons, the Court DENIES Sun's and Al-Barwani's motions to dismiss for lack of personal jurisdiction and failure to state a claim. Having read and considered the papers presented by the parties, the Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing scheduled for October 31, 2016, at 1:30 p.m. is VACATED and OFF CALENDAR.

IT IS SO ORDERED.

:

Initials of Preparer

PMC