TIMOTHY S. LEIMAN, Ill. Bar No. 6270153
Email: leimant@sec.gov
PAUL M. G. HELMS, Ill. Bar No. 6291623
Email: helmsp@sec.gov
PETER SENECHALLE, Ill Bar No. 6300822
Email: senechallep@sec.gov

Attorneys for Plaintiff
United States Securities and Exchange Commission
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

<u>LOCAL COUNSEL</u>
Lynn M. Dean, Cal. Bar No. 205562
Email: deanl@sec.gov
United States Securities and Exchange Commission
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　　　　　vs.<br><br>JAMMIN' JAVA CORP., dba MARLEY COFFEE, SHANE G. WHITTLE, WAYNE S. P. WEAVER, MICHAEL K. SUN, RENE BERLINGER, STEPHEN B. WHEATLEY, KEVIN P. MILLER, MOHAMMED A. AL-BARWANI, ALEXANDER J. HUNTER, and THOMAS E. HUNTER,<br><br>　　　　　Defendants. | Case No. 2:15-CV-08921-SVW-MRW<br><br>**RESPONSE OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION TO DEFENDANT WAYNE WEAVER'S L.R. 56-2 "STATEMENT OF ADDITIONAL FACTS"**<br><br>Hearing Date: May 22, 2017<br>Time: 1:30 pm<br>Hon. Stephen V. Wilson<br>Courtroom 10A |

# SEC'S RESPONSE TO WEAVER'S STATEMENT OF ADDITIONAL FACTS"

100. On November 30, 2016, the SEC identified R. Kevin Barrett as a "summary witness" in correspondence to counsel in this case.

**Response:** Undisputed.

101. In this case, the SEC did not designate Mr. Barrett as an expert, and did not disclose an expert report prepared and signed by him.

**Response**: Undisputed.

102. The total volume of documents produced in this case exceeds 29,300 documents and 170,200 pages. These documents were produced in different formats with varying search capabilities.

**Response**: Undisputed.

103. During its investigation, the SEC took sworn testimony from Ahn Tran, the former CEO of Jammin Java. Mr. Tran, who was responsible for negotiating and executing the financing agreement on behalf of Jammin Java, testified at length as to the company's objectives in entering into the deal, its implementation, and the circumstances surrounding the public release of information regarding the arrangement.

**Response**: Undisputed.

104. Tran testified that in 2010 the company was in need of working capital, and had approached several potential investors about providing that capital. Tran testified that the company was willing to offer stock in the fledgling company in return for a capital investment.

1  **Response**:   **Undisputed.**

2

3  105. In April 2010, the executives of Jammin Java (Tran, Rohan Marley, and Shane Whittle) met with a representative of Straight Path Capital, Raymond Hall, regarding a possible investment.

**Response:   Undisputed that executives of Jammin Java met with an individual identifying himself as "Raymond Hall" in April 2010. Disputed only in so far as this statement identifies "Raymond Hall" as a "representative of Straight Path." As reflected in the SEC's LR 56-1 Statement – and based on the undisputed incorporation records for Straight Path, the unrefuted testimony of Rene Berlinger, and Weaver's response to the SEC's L.R. 56-1 Statement – it is now undisputed that (a) Straight Path did not exist as a corporate entity in April 2010, (b) Straight Path had no employees other than Berlinger (much less a "Vice President for Business Development," as Raymond Hall identified himself), (c) the sole officer of Straight Path, Berlinger, had never heard of Raymond Hall, and (d) Straight Path never had a bank account (let alone funds available to provide "financing"). (SOF ¶¶ 58-61; SJ Ex. 2, Berlinger Tr. at 106:16-114:17; SJ Ex. 71; Dkt. #177-7, Weaver Resp. to SOF ¶¶ 58-61.)**

106. In November 2010, Tran and Hall engaged in a series of phone calls and emails regarding the terms of a possible financing arrangement. Straight Path proposed a capital investment in Jammin Java based on a valuation of 40 cents/share. Tran and the other members of Jammin Java executive leadership discussed this proposal, and decided that 40 cents/share was a fair price.

**Response: Undisputed as to the communications between Hall and Tran and that Tran testified that Jammin Java discussed the valuation and decided it was a fair price. Disputed only to the extent that this statement indicates that "Straight Path" proposed a capital investment. As reflected in the SEC's LR 56-**

2

**1 Statement – and based on the undisputed incorporation records for Straight Path, the unrefuted testimony of Rene Berlinger, and Weaver's response to the SEC's L.R. 56-1 Statement – it is now undisputed that (a) Straight Path did not exist as a corporate entity in April 2010, (b) Straight Path had no employees other than Berlinger (much less a "Vice President for Business Development," as Raymond Hall identified himself), (c) the sole officer of Straight Path, Berlinger, had never heard of Raymond Hall, and (d) Straight Path never had a bank account (let alone funds available to provide "financing"). (SOF ¶¶ 58-61; SJ Ex. 2, Berlinger Tr. at 106:16-114:17; SJ Ex. 71; Dkt. #177-7, Weaver Resp. to SOF ¶¶ 58-61.)**

107. Tran testified that the Jammin Java executives used this same 40 cents/share valuation to price their own options.

**Response**:   Undisputed.

108. In December, Straight Path provided Jammin Java with a draft Share Issuance Agreement, which Jammin Java's attorneys reviewed and revised. The financing agreement was entered into on December 22, 2010.

**Response**:   Undisputed that Jammin Java was presented with a draft Share Issuance Agreement. Disputed only to the extent that the statement indicates that "Straight Path" provided the draft agreement. As reflected in the SEC's LR 56-1 Statement – and based on the undisputed incorporation records for Straight Path, the unrefuted testimony of Rene Berlinger, and Weaver's response to the SEC's L.R. 56-1 Statement – it is now undisputed that (a) Straight Path did not exist as a corporate entity in April 2010, (b) Straight Path had no employees other than Berlinger (much less a "Vice President for Business Development," as Raymond Hall identified himself), (c) the sole officer of Straight Path, Berlinger, had never heard of Raymond Hall, and (d) Straight**

**Path never had a bank account (let alone funds available to provide "financing"). (SOF ¶¶ 58-61; SJ Ex. 2, Berlinger Tr. at 106:16-114:17; SJ Ex. 71; Dkt. #177-7, Weaver Resp. to SOF ¶¶ 58-61.)**

109. The financing agreement provided that Jammin Java could request from Straight Path up to $2.5 million in funding to be used for operating expenses, acquisitions, working capital, and general corporate activities. The agreement further provided that Straight Path had the right to refuse a request for funding, and could terminate the agreement if it was not satisfied with the business affairs of Jammin Java. The agreement also gave Straight Path the option of providing an additional $500,000 in funding at its discretion.

**Response**:   **Undisputed that the stated provisions are included in the agreement. Disputed only to the extent that the statement suggests that "Straight Path" would provide financing, or negotiated the terms. As reflected in the SEC's LR 56-1 Statement – and based on the undisputed incorporation records for Straight Path, the unrefuted testimony of Rene Berlinger, and Weaver's response to the SEC's L.R. 56-1 Statement – it is now undisputed that (a) Straight Path did not exist as a corporate entity in April 2010, (b) Straight Path had no employees other than Berlinger (much less a "Vice President for Business Development," as Raymond Hall identified himself), (c) the sole officer of Straight Path, Berlinger, had never heard of Raymond Hall, and (d) Straight Path never had a bank account (let alone funds available to provide "financing"). (SOF ¶¶ 58-61; SJ Ex. 2, Berlinger Tr. at 106:16-114:17; SJ Ex. 71; Dkt. #177-7, Weaver Resp. to SOF ¶¶ 58-61.)**

110. Between January 2011 and March 2011, Jammin Java received three $40,000 payments under the Straight Path agreement.

**Response**:   **Undisputed.**

4

111. In May 2011, Straight Path exercised its option to invest the additional capital contemplated by the agreement at the agreed upon share price of 40 cents.

**Response**:   Undisputed.

112. Tran testified that each of the "draw-downs" under the financing arrangement was initiated by Jammin Java based on financial needs of the company at the time: "The [Jammin Java management] group would make the decision in the sense we didn't have money, the draw-downs were pretty much associated with the depletion in our bank accounts."

**Response**:   Undisputed.

113. In total, Jammin Java received $2,500,000 in capital investment as a result of the Straight Path financing arrangement.

**Response**:   Undisputed.

114. The Straight Path financing was disclosed to the public in two ways. First, in conjunction with the execution of the agreement, Jammin Java issued a press release announcing that it had "entered into an equity investment agreement with certain institutional investors for the purchase of the Company's common stock at $0.40 per share." Second, Jammin Java disclosed the terms of the financing agreement in a Form 8-K filing on January 5, 2011.

**Response**:   Undisputed.

115. The Form 8-K, which was signed by Tran, accurately describes the agreement with Straight Path. The filing describes the fact that Jammin Java had the right to request Straight Path to purchase up to $2,500,000 in stock at a price of 40 cents/share. It also disclosed the uses to which Jammin Java would put the financing, and that Straight Path maintained complete discretion as to whether to

5

make the investments allowed for under the agreement.

**Response**: **Undisputed that Jammin Java's Form 8-K accurately described certain terms of the Straight Path finance agreement. As indicated in the SEC's Statement of Facts – and based on Weaver's response to those facts – it is also undisputed that the disclosure did <u>not</u> accurately describe the Straight Path agreement insofar as the Form 8-K indisputably did not disclose that (a) Straight Path did not exist as a corporate entity, (b) Straight Path was an empty shell created by Wayne Weaver five months after the agreement was signed, (c) Straight Path did not have a bank account (let alone any funds to provide as "financing"), and (d) the sole officer of Straight Path, Berlinger, had never heard of Raymond Hall. (SOF ¶¶ 58-61; SJ Ex. 2, Berlinger Tr. at 106:16-114:17; SJ Ex. 71; Dkt. #177-7, Weaver Resp. to SOF ¶¶ 58-61.)**

116. Tran testified that Jammin Java press releases were drafted by IRG, an investor relations firm, and that he and Rohan Marley approved the press releases before they went out. Tran was not certain that IRG had been retained at the time of the December 23, 2010 press release regarding the financing agreement. Mr. Marley testified that he believed that IRG was hired shortly after Jammin Java was formed.

**Response**:   **Undisputed.**

117. Tran testified that he never met or talked with Weaver in connection with the financing.

**Response**:   **Undisputed.**

Dated:  May 11, 2017          Respectfully submitted,

          /s/ *Peter Senechalle*
          Peter Senechalle

6

1
2
3
4
5

U.S. Securities and Exchange Commission
Chicago Regional Office
175 W. Jackson Blvd., Suite 1450
Chicago, Illinois  60604
Telephone:  (312) 353-1821
Fax:  (312) 353-7398
senechallep@sec.gov

**CERTIFICATE OF SERVICE**

6
7
8
9
10
11
12

Peter Senechalle hereby certifies that he caused the foregoing document to be filed through the Court's CM/ECF system on May 11, 2017, which automatically sends an electronic copy of the document to all counsel of record.

*/s/ Peter Senechalle*

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28