**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
MARGARET E. DAYTON (State Bar No. 274353)
pdayton@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, California 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

**Attorneys for Defendant Wayne Weaver**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO. 2:15-cv-08921 SVW (MRWx) |
| Plaintiff, | Hon. Stephen V. Wilson |
| v. | **DEFEDANT WAYNE WEAVER'S SURREPLY IN OPPOSITION TO THE SEC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST HIM** |
| JAMMIN' JAVA CORP., dba MARLEY COFFEE, SHANE G. WHITTLE, WAYNE S. P. WEAVER, MICHAEL K. SUN, RENE BERLINGER, STEPHEN B. WHEATLEY, KEVIN P. MILLER, MOHAMMED A. AL-BARWANI, ALEXANDER J. HUNTER, and THOMAS E. HUNTER, | Date: June 5, 2017<br>Time: 1:30 p.m.<br><br>Trial Date: July 11, 2017 |
| Defendants. | |

## I. INTRODUCTION

By submitting 25 new exhibits, including 90 pages of charts, the SEC's Reply brief all but concedes it failed to meet its initial burden of showing there is no genuine dispute of material fact and that summary judgment is appropriate in this case. Although the SEC's newly-submitted evidence and newly-minted arguments demonstrate the essential failure of its initial Motion, neither cures the evidentiary deficiencies presented by the Barrett Declaration nor refutes the evidence Weaver's Opposition presented demonstrating the existence of material factual disputes with regard to the SEC's claims. Because the SEC improperly presented this new material for the first time in Reply, the Court can – and should – decline to consider it; however, even if the Court considers the new material, the SEC is still not entitled to summary judgment, as set forth below.

## II. ARGUMENT

### A. The Court Should Not Consider the Evidence and Arguments the SEC Presents for the First Time In Its Reply Brief

"It is well established that new arguments and evidence presented for the first time in Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)); *see also United States v. Alcan Elec. & Eng., Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999) (arguments raised for the first time in reply are waived and need not be considered). Where the new evidence and argument "address issues which should have been addressed in the opening brief," inclusion of the material for the first time in reply is particularly inappropriate. *See Docusign, Inc.*, 468 F. Supp. 2d at 1307 (granting motion to strike new evidence and argument submitted in reply). Here, the SEC submits 25 new exhibits intended to authenticate documents it submitted with its Motion and presents new legal arguments in support of its "scheme liability" fraud claim against Mr. Weaver. Notably, none of the SEC's newly submitted evidence effectively refutes the fact issues Weaver's Opposition

1 established.  For example, Weaver's Opposition demonstrates the Straight Path
2 financing agreement had a legitimate business purpose, which the SEC does not
3 refute or challenge.  (Pl.'s Resp. to Weaver's Additional Facts (Doc. No. 193) at ¶¶
4 103-104, 109, 112-13).  Similarly, the SEC's "evidence" did not demonstrate Mr.
5 Weaver "controlled" the entities or directed the transactions in the accounts at issue,
6 as Mr. Weaver highlighted in his Statement of Genuine Issues.  (Def.'s Stmt. Of
7 Genuine Issues (Doc. No. 177-7) at ¶ 2).  The SEC's Reply does not even attempt to
8 address this deficiency.

9   The SEC's new arguments and evidence "should have been addressed in the
10 opening brief," and the Court should decline to consider them.[1]  *See Docusign, Inc.*,
11 468 F. Supp. 2d at 1307.  However, even if the Court considers the SEC's belated
12 contentions, they do not demonstrate summary judgment is appropriate.

13   B.   <u>The SEC's Newly-Presented Evidence Does Not Render the Barrett
14        Declaration or Its Exhibits Admissible</u>

15   In support of its Motion, the SEC presented the Declaration of R. Kevin
16 Barrett, which was essentially the allegations of the SEC's Amended Complaint,
17 repackaged as sworn testimony from one of its senior accountants.  (Barrett Decl.
18 (Doc. No. 174-1)).  In his Opposition, Mr. Weaver argued that the Barrett

---

[1] The majority of the "new" exhibits are documents and materials the SEC possessed long before it filed its Motion.  (*See, e.g.*, SJ Reply Ex. 4 (declaration dated 12/16/2016), SJ Reply Ex. 5 (declaration dated 11/30/2016), SJ Reply Ex. 6 (declaration dated 12/5/2016), SJ Reply Ex. 7 (declaration dated 12/1/2016), SJ Reply Ex. 8 (declaration dated 5/12/2016), SJ Reply Ex. 9 (declaration dated 1/31/2017), SJ Reply Ex. 11 (excerpts from a deposition that occurred on 2/7/2017), SJ Reply Ex. 12 (excerpts from a deposition that occurred on 1/24/2017), SJ Reply Ex. 13 (excerpts from a deposition that occurred on 2/21/2015), SJ Reply Ex. 14 (form filed on 11/18/2009), SJ Reply Exs. 15, 16, 17, 18, 19, 20, 23 (documents produced in discovery in this case), SJ Reply Ex. 22 (excerpts from a deposition that occurred on 11/20/2013), SJ Reply Ex. 24 (excerpts from a deposition that occurred on 1/26/2017), SJ Reply Ex. 25 (excerpts from a deposition that occurred on 1/27/2017)).

Declaration and its Exhibits are inadmissible because: (1) the Barrett Declaration does not specifically disclose the source materials it relies upon and demonstrate such materials were produced to Mr. Weaver; and (2) the Barrett Declaration does not demonstrate that its source materials are admissible.  (Def.'s Opp. (Doc. No. 177) at 4-10).  In Reply, the SEC purports to cure the evidentiary deficiencies of the Barrett Declaration through its SJ Reply Ex. 1, a chart "that includes (a) a categorical index of the documents that Mr. Barrett relied on, (b) identification of the producing party, (c) the Bates prefix used for the relevant production, and (d) identification of both the account holder and (where applicable) the account custodian."  (Pl.'s Reply (Doc. No. 186) at 6).  The SEC further contends that "for each category, the SEC identifies the *prima facie* basis for authenticity."  (*Id.* at 6).[2]

The SEC's SJ Reply Ex. 1 does not render the Barrett Declaration admissible because it was not timely provided to Mr. Weaver.  *See Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 615 n.12, 612 (Fed. Cl. 2005) (excluding summary evidence because adequate, specific disclosure of the underlying documents was untimely).  Yet, even if the Court considers SJ Reply Ex. 1, it does not cure the evidentiary deficiencies and does not permit the Court to consider the Barrett Declaration.

First, SJ Reply Ex. 1 demonstrates that some of the documents Mr. Barrett relied upon were not disclosed until the SEC's Reply brief and were never produced to Mr. Weaver.  (SJ Reply Ex. 1 (Doc. No. 187-1) at 61 (identifying "public

---

[2] The SEC also advances the improper argument that Mr. Weaver should know what documents Mr. Barrett relied upon because it alleges these are accounts Mr. Weaver controlled, and therefore, he should be familiar with the documents.  (Pl.'s Reply (Doc. No. 186) at 6).  The argument is meritless and should be summarily disregarded.  *See Stryker Corp. v. XL Ins. Amer.*, No. 4:01-cv-157, 2006 WL 3802174, at *2 (W.D. Mich. Dec. 21, 2006) (the proponent of summary evidence must meet its burden of disclosure even when the opponent "may have a general understanding of which documents underlie the summaries").

documents" and not indicating a producing party)). Therefore, the SEC fails to show it satisfied FRE 1006's disclosure requirements with respect to these documents. *See Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996) (holding admission of summary exhibits was error where proponent failed to make available underlying materials).

Second, SJ Reply Ex. 1 still does not specifically identify all of the documents Mr. Barrett relied upon. SJ Reply Ex. 1 identifies 79 "categories" of documents it contends were produced in this case and relied upon by Mr. Barrett. For 20 of those categories (or roughly 25% of them), the SEC fails to identify a specific Bates range or Bates number identifying the documents. Instead, it merely states that certain parties produced the documents at issue. (*See, e.g.*, SJ Reply Ex. 1 (Doc. No. 187-1) at 1 ("Documents produced by the Swiss Financial Market Supervisory Authority ("FINMA") (Bates label prefix "SEC-FINMA-P-" and "FINMA-")); *see also id.* at 2-5, 11-20, 23-25, 35, 52, 60). The SEC's representation that the underlying documents are available in a voluminous production produced by a third party is insufficient. *See Jade Trading*, 67 Fed. Cl. at 615 n.12, 612 (holding proponent's representation that source documents were contained in 15,698-page production from third parties was inadequate). Instead, SJ Reply Ex. 1 continues to "unfair[ly]" require Mr. Weaver "to wade through thousands of pieces of paper" and does not satisfy the SEC's disclosure burden or cure the inadmissibility of the Barrett Declaration. *See United States for the use and benefit of Maris Equip. Co., Inc.*, 163 F. Supp. 2d 174, 200 (E.D.N.Y. 2001). By the SEC's own admission, "hundreds of documents support[] Mr. Barrett's declaration." (Pl.'s Reply (Doc. No. 186) at 5). Despite the SEC's protests that it should not have to identify every document, (*id.*), the case law requires that it do so. *See Jade Trading*, 67 Fed. Cl. at 615 (noting proponent of summary eventually identified the 430 documents underlying the summary, but such adequate disclosure was untimely). Indeed, the SEC's *own failure* to locate the documents in the voluminous productions and specifically

identify them in its SJ Reply Ex. 1 demonstrates that such identification is an incredibly onerous task – even for the party that created the summary.

Third, SJ Reply Ex. 1 doesn't tie any of the purported "evidence" to the factual assertions in the Barrett Declaration. Instead, it merely provides an index of the documents produced in this case that pertain to each entity. The SEC's "categorical index" doesn't show the Court or Mr. Weaver which documents support which factual assertions. For example, neither the Barrett Declaration nor SJ Reply Ex. 1 shows the Court or Mr. Weaver which documents indicate that particular trades or transfers occurred on the dates or in the amounts referenced in the SEC's summary. "The purpose of the availability requirement is to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial." *Paddack v. Dave Christiansen, Inc.*, 745 F.2d 1254, 1261 (9th Cir. 1984); *Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 8 (1st Cir. 1996) (noting guaranteed access to documents underlying the summary evidence is "designed to give the opponent the ability to check the summary's accuracy and prepare for cross-examination"). Where, as here, the summary does not tie its specific factual assertions to the specific source documents, Mr. Weaver cannot determine the summary's truth or accuracy. *See Paddack*, 745 F.2d at 1261, n. 10 (criticizing summary evidence where summary witness did not identify specific documents that underlay specific factual statements).

The Barrett Declaration's scope greatly increases this problem. The SEC's "summary witness" does not summarize one set of bank records or the factors underpinning a damages calculation. Instead, the SEC presents its entire factual narrative of the case and its alleged basis for liability on all claims it asserts against Mr. Weaver through its "summary witness." (*See* Barrett Decl. (Doc. No. 174-1) and Pl.'s Mot. (Doc. No. 171) *generally*). The SEC's "categorical index" of the document production in this case – organized by entity rather than factual assertion – does not permit Mr. Weaver to check the accuracy of the 61-paragraph, 29-page

detailed, factual narrative offered by the Barrett Declaration.

Because the Barrett Declaration remains inadmissible, the SEC has not met its burden, and summary judgment must be denied. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03, 1107 (9th Cir. 2000); *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 245-46 (Fed. Cl. 2003); (Def.'s Opp. (Doc. No. 177) at 2, 11-13, 16, n.6).

### C. The SEC's Newly-Minted Theories of Fraud Liability Fail as a Matter of Law

In addition to improperly presenting new evidence in its Reply brief, the SEC also improperly presents new theories of liability in support of its "scheme liability" fraud claim.

In its Motion, the SEC argued that the Straight Path financing agreement is a "sham transaction" or a "manipulative or deceptive device" that gives rise to liability under Rules 10b-5(a) and (c). (Pl.'s Mot. (Doc. No. 172) at 22). To prevail on this theory, the SEC must show that the "illegitimate transaction has the *principal purpose and effect* of creating a false appearance of fact in the furtherance of a scheme to defraud." *Simpson v. AOL Time Warner*, 452 F.3d 1040, 1050 (9th Cir. 2006), *vacated on other grounds by Simpson v. Homestore.com*, 519 F.3d 1041 (9th Cir. 2006) (emphasis added) (cited by the Pl.'s Mot. at 22). Accordingly, to qualify as a sham transaction, the transaction at issue must be "completely illegitimate," such that "no products of value were exchanged" between the parties and "the transaction had no legitimate economic value." *Id.* at 1053.

As this authority commands, the SEC argued in its Motion that "everything about [the Straight Path Agreement] was bogus," and claimed it is a "sham transaction" and a "deceptive device" because it "create[d] an appearance of substance where substance is lacking." (Pl.'s Mot. (Doc. No. 172) at 23). In Opposition, Mr. Weaver presented evidence demonstrating the Straight Path Agreement had economic substance and a legitimate business purpose – under the

Straight Path Agreement, Jammin' Java received financing and Straight Path received shares in Jammin' Java, as contemplated by the terms of the financing transaction. (Def.'s Opp. (Doc. No. 177) at 17-18). In its Reply brief, the SEC does not dispute Mr. Weaver's evidence demonstrating, at a minimum, that there is a factual dispute as to the legitimacy of the Straight Path Agreement that precludes summary judgment on the SEC's scheme liability fraud claim.

Unable to refute Mr. Weaver's evidence, the SEC improperly offers two new arguments in support of its fraud claim in its Reply brief: (1) the Straight Path financing agreement contained "suspect qualities," (Pl.'s Reply (Doc. No. 186) at 12-13), and (2) the investing public was misled by *false statements and omissions regarding* the Straight Path financing agreement, (*id.* at 14).[3] The SEC's new arguments fail as a matter of law.

With regard to the first argument, where a transaction has economic substance but "contain[s] suspect qualities," it is not a sham transaction or deceptive device giving rise to scheme liability. *Simpson*, 452 F.3d at 1053. In *Simpson*, the Ninth Circuit held that scheme liability was not appropriate with respect to the transactions at issue because although the transactions at issue "are alleged to contain suspect qualities, such as exaggerated commissions by AOL, there is no suggestion that actual advertisements were not purchased and sold" under the terms of the transactions. *Id*. In other words, despite their "suspect qualities" the transactions at issue had economic substance; therefore, they were not "shams." *Id.*; *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 484-85 (S.D.N.Y. 2005) (holding financing and investment transactions were not shams because they had economic substance).[4]

---

[3] As set forth above, because these arguments were raised for the first time in reply, the Court need not consider them. *Alcan Elec. & Eng., Inc.*, 197 F.3d at 1020.

[4] The SEC's other authority similarly requires the allegedly sham transactions have

With regard to the second argument, "[s]cheme liability [] 'hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement.'" *Farmer*, 2015 WL 5838867, at *14. Here, the SEC claims what is deceptive about the Straight Path Agreement is the failure to disclose that "(a) the 'financing company' did not exist, (b) the 'financing company' had no money (or even a bank account), or (c) the 'financing' would come from another entity contingent on its illegal, unregistered sale of Jammin' Java stock." (Reply (Doc. No. 186) at 14). These criticisms are alleged misstatements and omissions that cannot be the basis of "scheme liability." (*See* FAC ¶¶ 163-64 (alleging *conduct* that purportedly gives rise to the SEC's Section 10(b) claim against Weaver)); *see Parmalat Sec. Litig.*, 376 F. Supp. 2d at 505 (no scheme liability where "[a]ny deceptiveness resulted from the manner in which Parmalat or its auditors described the transactions"); *cf. Farmer*, 2015 WL 5838867, at *14 ("[t]he concept of 'scheme liability' recognizes that because '[c]onduct itself can be deceptive,' [citation], a defendant may incur primary liability for securities fraud without making or using an 'oral or written statement,' [citation]."). Therefore, the SEC's new arguments do not salvage its Section 10(b) claim against Mr. Weaver, and summary judgment is not appropriate.

III.   CONCLUSION

For the foregoing reasons, Mr. Weaver respectfully requests the Court decline to consider the new material the SEC presented in its Reply brief. However, even if the Court considers the new material, the SEC's motion for summary judgment

---

no legitimate business purpose. *S.E.C. v. Hopper*, No. CIV.A. H-04-1054, 2006 WL 778640, at *2 (S.D. Tex. 2006) (scheme liability attached where "[t]he round-trip trades had no economic substance and no impact on net income; instead, their purpose was artificially to increase [company's] reported trading volumes"); *S.E.C. v. Farmer*, No. 4:14-cv-2345, 2015 WL 5838867, at *14 (S.D. Tex. Oct. 7, 2015) (scheme liability attached where the sham IPO purchases had no economic substance and the defendant admitted the goal of the deceptive advertising device was to deceive the market).

should be denied in its entirety.

DATED: May 29, 2017         SCHEPER KIM & HARRIS LLP
                            MARC S. HARRIS
                            MARGARET E. DAYTON


                            By:     /s Margaret E. Dayton
                                  Margaret E. Dayton
                                  Attorneys for Defendant Wayne Weaver